**UNITED STATES of America,**
**Plaintiff,**

v.

**Nathaniel BROWN, Defendant.**

Crim. A. No. 23919–3.

United States District Court,
W. D. Missouri, W. D.

May 13, 1974.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

David R. Freeman, Federal Public Defender, Kansas City, Mo., for defendant.

## FINAL JUDGMENT AFFIRMING JUDGMENT OF CONVICTION

WILLIAM H. BECKER, Chief Judge.

The defendant Nathaniel Brown is charged in an information with attempting to board a commercial aircraft being operated by an air carrier in air transportation while having on or about his person a "concealed deadly or dangerous weapon" in violation of Section 1472($l$), Title 49, United States Code. On August 14, 1972, the defendant appeared with appointed counsel before the Chief United States Magistrate and was advised of: (1) the charge set forth in the information; (2) his right to remain silent; (3) his right to bail; and (4) the right to be tried before a judge of the United States District Court or to waive trial before such a judge. Defendant freely and voluntarily signed a written consent to be tried before the United States Magistrate pursuant to Section 3401, Title 18, United States Code. Upon arraignment on August 14, 1972, defendant entered a plea of not guilty. Immediately thereafter, the parties announced that they were prepared to stipulate most of the evidence in the case for submission to the Magistrate.

Most of the material facts and evidence were stipulated and set forth in the Magistrate's findings. They are quoted hereinafter. Plaintiff's Exhibit No. 1, a .22 caliber Vanguard tear gas handgun and 8 cartridges, three of which were blank and five of which contained tear gas (all containing gunpowder to be exploded by the action of the hand gun) and plaintiff's Exhibit No. 2, a Stipulation, were received in evidence. The Stipulation reads as follows:

"Come now the United States of America by Anthony P. Nugent, Jr., Assistant United States Attorney, and the defendant, Nathaniel Borwn, in person and by his attorney, Assistant Federal Public Defender Gary Eldredge, and stipulate and agree as follows:

"1. On August 3, 1972, shortly before 5:00 p. m., defendant Nathaniel Brown presented himself at Gate 7–8 for the purpose of boarding Trans World Airlines Flight 270 for a flight from Kansas City, Missouri, to Philadelphia, Pennsylvania. At that time

he was screened by the magnetometer for firearms on his person. At the same time a separate and routine search of his flight bag was made by an employee of Trans World Airlines, in the course of which a loaded Vanguard tear gas pistol and eight shells (five tear gas and three blank) were found beneath numerous items of personal belongings.

"2. This search of defendant's flight bag was routine in that a search of the carry-on luggage for all passengers boarding Flight 270 was then being conducted, and the defendant was not the first to be searched.

"3. Prior to the search defendant had presented his ticket to the TWA agent and had been furnished with a boarding pass for Flight 270.

"4. Defendant at no time herein-mentioned aroused the suspicion of the TWA employees or the U. S. Marshals. Defendant was not stopped and searched because he fit the so-called 'profile'. Defendant made no attempt to hide, to use or to reach for the tear gas gun in his flight bag.

"5. The tear gas pistol in question is incapable of firing any kind of solid projectile and it is only capable of firing a does [sic] of tear gas in gaseous form, or a blank cartridge. The tear gas gun is incapable of accepting into its chamber a bullet of any calibre and is not amenable in that the cylinder is so constructed as to block the insertion of regular ammunition. Moreover, the barrel of the tear gas gun in its present form contains a metal piece which is apparently the bottom part of the sight at the top of the barrel. Finally, the tear gas gun is constructed of such light metal as to be dangerous to the person who might attempt to fire regular ammunition through the barrel if the cylinder could be modified.

"6. The defendant's character is good. He is the assistant pastor of St. Mark's Christian Methodist Episcopal Church, 1520 N. Marshall St., Philadelphia, Pennsylvania, and pastor of the St. James Station Circuit Mission of the Philadelphia District of the New York–Washington Annual Conference of the Christian Methodist Episcopal Church.

"7. The foregoing stipulation of fact and Government's Exhibit No. 1, that is, the tear gas gun and above-mentioned cartridges, are submitted by the parties to the court and constitute all of the evidence which the parties wish to submit; and the parties hereby submit the case to the court on this stipulation and the aforesaid exhibit."

The defendant was the only witness for the defense. He testified concerning his acquisition of the tear gas pistol and stated that he was not "fully aware" that the pistol was in his carry-on bag when he attempted to board the aircraft. At the close of the entire case, defendant made an oral motion for judgment of acquittal and subsequently filed a written motion. Thereafter, on August 31, 1972, he filed a memorandum of law in support of the motion for judgment of acquittal. On September 19, 1972, the United States of America filed a memorandum in opposition to defendant's motion for judgment of acquittal.

In an excellent memorandum, defendant's counsel contended that the .22 caliber Vanguard revolver designed to fire only blank and tear gas cartridges was not a "dangerous or deadly" weapon within the meaning of Section 1472($l$), Title 49, United States Code.

On October 10, 1972, after the filing of the stipulation, the United States Magistrate entered a judgment, stating therein his findings of fact and conclusions of law and finding the defendant guilty. The Magistrate found that " . . . the defendant knew that the tear gas pistol was in his carry-on bag when he attempted to board the air-

craft." The Magistrate also found that ". . . the .22 caliber Vanguard [tear gas] revolver found in the defendant's luggage was a concealed dangerous weapon within the purview of 49 USC 1472(*l*)."

Thereafter, on November 21, 1972, defendant filed, pursuant to Rule 8(a) of the Federal Rules of Procedure for the Trial of Minor Offenses, his notice to appeal to this Court from the judgment of conviction and sentence imposed by the Court on November 21, 1972. This case is presently before this Court on appeal under Section 3402, Title 18, United States Code.

On January 4, 1973, an order was entered directing that the parties be provided an opportunity to file additional contentions and authorities in accordance with the schedule for filing set forth in that order. In a letter to the undersigned dated January 8, 1973, counsel for defendant stated that he ". . . did not desire to present any additional arguments or authorities for the Court's consideration in determining the appeal from Magistrate Hamilton's decision." A similar letter dated January 10, 1973, was received by the undersigned from counsel for the Government. Thus, this appeal is presented to this Court on the briefs and authorities initially submitted to the United States Magistrate.

■ The case at bar is before this Court on appeal from a decision by the United States Magistrate. In reviewing that decision, this Court acts in the capacity of an appellate court and must accept each finding of fact of the Magistrate unless such finding is shown to be clearly erroneous. Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501, 507 (1963); United States v. Margraf, 347 F.Supp. 230, 232 (E.D.Pa.1972); United States v. Williams, 220 F.Supp. 556, 557 (N.D.Cal. 1963).

### The Requirement of Knowing Possession

■ In 1961, Congress added subsections (i) to (n), inclusive, to Section 1472, Title 49, United States Code, by an act commonly referred to as the Anti-Hijacking Statute. Of the offenses added, subsection (m) has a requirement of proof of express intent while subsections (i) to (k), inclusive, subsume an intent requirement by making criminal certain described acts. It is not obvious whether subsection (*l*), upon which the charge in this case is based, incorporates any requirement of proof of knowledge or intent. If such a requirement exists, the nature of the knowledge or intent is not expressly defined.

Subsection (*l*) provides as follows:

". . . Whoever, while aboard an aircraft being operated by an air carrier in air transportation, has on or about his person a concealed deadly or dangerous weapon, or whoever attempts to board such an aircraft while having on or about his person a concealed deadly or dangerous weapon, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Clearly, proof of an intent to highjack an aircraft or of intent to inflict death or serious injury is not required in order to convict under Section 1472(*l*). The question remains whether the Government must prove by indirect or direct evidence knowledge of possession of a weapon concealed and in possession of a defendant. On this question the authorities will be examined.

In the recent case of United States v. Margraf, 347 F.Supp. 230 (E.D.Pa. 1972), affirmed, 483 F.2d 708 (3rd Cir. 1973), judgment vacated, 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1973), the District Court held that "mens rea" was not an essential element, and the Court of Appeals for the Third Circuit held that "specific intent" was not an essential element of an offense under Section

1472(*l*). The decision of the Court of Appeals made reference to portions of the legislative history [1] of the Anti-Hijacking Statute and Justice Blackmun's comments in Holdridge v. United States, 282 F.2d 302, 310 (8th Cir. 1960) [2] in support of the proposition that "specific intent" was not required under Section 1472(*l*). The Court of Appeals found additional support by comparing subsection (m) of Section 1472 to subsection (*l*) of that same Section.[3]

The only other reported decisions on Section 1472(*l*) do not expressly define the question what, if any, knowledge or intent need be proven to convict a defendant under Section 1472(*l*). *See,* United States v. Ware, 315 F.Supp. 1333 (W.D.Okla.1970); United States v. Cook, 446 F.2d 50 (9th Cir. 1971); United States v. Dishman, 486 F.2d 727 (9th Cir. 1973).[4]

Two recent cases of the United States Supreme Court provide some information relevant to the question in this case.

The first of these cases is United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). There the defendants had been charged with possession of unregistered firearms by reason of their possession of unregistered hand grenades, all in violation of the National Firearms Act. 26 U.S.C. § 5812 *et seq.* The statute involved in the *Freed* case, as that involved in the case at bar, contained no express requirement of proof of knowledge or intent. In discussing the majority opinion, Mr. Jus-

1. Writing for the majority in United States v. Margraf, 483 F.2d 708, 710 (3rd Cir. 1973), Judge Hunter made reference to the following legislative history with respect to Section 1472(*l*):

'The primary purpose of this legislation is to amend the Federal Aviation Act of 1958 so as to extend Federal criminal laws to certain acts committed on board aircraft—in particular, such acts as aircraft "hijacking", murder, manslaughter, assault, maiming, carrying concealed deadly or dangerous weapons, and stealing personal property. . . . '

'Recent events have demonstrated the urgent need for stronger Federal laws applicable to criminal acts committed aboard commercial and private aircraft.'

'The provisions of this legislation, it will be noted, are based on the use of criminal sanctions as a deterrent to the commission of criminal acts. . . . '

'Broad, stringent legislation such as is proposed here, cannot, of course, prevent piracy of aircraft, but it is to be hoped that the enactment of laws providing stiff penalties for various crimes in air commerce will deter all except the hopelessly unbalanced from risking life and liberty in such undertakings.' H.R.Rep. No. 958, 87th Cong., 1st Sess. (1961), 1961 U.S.Code Congressional and Administrative News 2563.

2. In Holdridge v. United States, 282 F.2d 302, 310 (8th Cir. 1960), Mr. Justice (while Circuit Judge) Blackmun listed the following factors as determinative of the question whether a particular statute can be construed as not requiring any element of "intent":

" . . . where a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting."

3. In United States v. Margraf, 483 F.2d 708, 710 (3rd Cir. 1973), the Court of Appeals stated as follows:

"The presence of these factors here plus the strong contrast between paragraph (*l*) and 49 U.S.C. § 1472(m) compel us to hold that paragraph (*l*) does not contain a specific intent requirement. Paragraph (m) was passed by Congress at the same time as paragraph (*l*). The fact that paragraph (m) contains an express intent requirement is particularly convincing evidence that Congress did not intend such a requirement for paragraph (*l*). That the maximum penalties for violating paragraph (*l*) are much less than those for violating paragraphs (i) and (j) is also an indication that no specific intent is necessary for a violation of paragraph (*l*)."

4. In United States v. Dishman, 486 F.2d 727, 732 (9th Cir. 1973), the Court of Appeals for the Ninth Circuit simply stated that subsection (*l*) is a "non-intent" statute. No reasoning or authorities are cited in support of the above conclusion.

tice Brennan stated in his concurring opinion, as follows:

" . . . To convict appellees of possession of unregistered hand grenades, the Government must prove three material elements: (1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered. The Government and the Court agree that the prosecutor must prove knowing possession of the items and also knowledge that the items possessed were hand grenades. Thus, while the Court does hold that no intent at all need be proved in regard to one element of the offense—the unregistered status of the grenades—knowledge must still be proved as to the other two elements. Consequently, the National Firearms Act does not create a crime of strict liability as to all its elements. It is no help in deciding what level of intent must be proved as to the third element to declare that the offense falls within the 'regulatory' category." United States v. Freed, 401 U.S. 601, 612–613, 91 S.Ct. 1112, 1120, 28 L.Ed.2d 356, 364 (1971) (J. Brennan, concurring opinion). (Emphasis added.)

The second United States Supreme Court case is United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). In that case, the statute involved contained a provision requiring that "knowledge" be proven. However, the Supreme Court found little difficulty in equating the Government's burden of proof with the burden discussed by the concurring opinion in the *Freed* case, even though the statute in the *Freed* case did not contain such a requirement. In an apparent approval of the concur-

ring opinion in the *Freed* case as accurately reflecting the views of the majority in the *Freed* case, the Supreme Court stated in United States v. International Minerals & Chemical Corp., 402 U.S. 558, 560, 91 S.Ct. 1697, 1699, 29 L. Ed.2d 178, 180–181 (1971) as follows:

"Here as in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed. 2d 356, which dealt with the possession of hand grenades, strict or absolute liability is not imposed; knowledge of the shipment of the dangerous materials is required. . . ."

Whether the Government must prove, under Section 1472(*l*), knowledge of possession of a concealed weapon is complicated by varying expressions and concepts relating to consciousness or state of mind in criminal law. The presence of *mens rea*[5] or a "vicious will," which was long a requirement of criminal responsibility, Morissette v. United States, 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288, 294 (1952), was the term employed by the District Court in United States v. Margraf, *supra*. In contrast, the Court of Appeals for the Third Circuit in United States v. Margraf, *supra*, held that "specific intent" need not be proven, while Chief Judge Seitz stated in his lengthy dissenting opinion that the Government must " . . . prove that defendant knowingly possessed what he knew to be a 'concealed deadly or dangerous weapon.'" United States v. Margraf, 483 F.2d 708, 714 (3rd Cir. 1973). Other courts have employed various other terms, including, but not limited to, such terms as "culpable intent," "culpable responsibility," "knowledge," "knowledgable intent" and "purposeful intent."[6] The scope and perplexity of this substantive and semantic controversy is demonstrated by a review of the majority and concurring opinions in United

5. "The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Smith v. California, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, 209 (1959), reh. denied, 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383 (1960); Dennis v. United

States, 341 U.S. 494, 500, 71 S.Ct. 857, 95 L.Ed. 1137, 1147 (1951).

6. See ALI Model Penal Code § 2.02 (Prop. Official Draft 1962) for different levels of intent as defined therein.

States v. Freed, *supra,* United States v. International Minerals & Chemical Corp., *supra,* and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969).

For purposes of this opinion, it is neither necessary nor desirable to attempt to distinguish or to reconcile and define the general concepts and terms of knowledge, intent, and criminal mental responsibility mentioned above.

■ Considering the reasoning and contentions in the opinions in United States v. Margraf, *supra;* United States v. Freed, *supra,* and United States v. International Minerals & Chemical Corp., *supra,* and having thoroughly reviewed the scant legislative history of Section 1472, and absence of precise legislative history with respect to Section 1472(*l*), it is concluded that the Government must prove that the defendant *knew* that he possessed the tear gas handgun in question at or about the time he attempted to board the commercial air carrier. (The fact that the handgun was concealed is amply proved.) The proof of knowing possession need not include any knowledge on the part of the defendant that the object in question was a "deadly or dangerous" weapon within the meaning of Section 1472(*l*). All that is required in the case at bar is that the defendant *knowingly* committed an act which a court may determine was a violation of the statute. This conclusion implements the Congressional purpose [7] of preventing or deterring air piracy through stringent legislation, yet requiring the courts to " . . . determine in each case, as it arises, whether the weapon in question was deadly or dangerous." H.R.Rep.No.958, 87th Cong., 1st Sess., U.S.Code Congressional and Administrative News pp. 2563, 2570 (1961).

For this purpose, it is unnecessary to attribute to Congress an intent that Section 1472(*l*) be construed as a statute imposing absolute liability with no element of knowledge of possession of the weapon. To impose "absolute liability" without knowledge would be contrary to the limitations enunciated by the Supreme Court in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), reh. denied, 355 U.S. 937, 78 S. Ct. 410, 2 L.Ed.2d 419 (1958) and Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), reh. denied, 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383 (1960).

■ In the case at bar, the defendant testified that he was not "fully aware" that the loaded tear gas gun was in his carry-on bag when he attempted to board the aircraft. This limited denial of knowledge did not entitle the defendant to acquittal as a matter of law. Nor would an unlimited denial of knowledge entitle the defendant to an acquittal as a matter of law.

■ The element of knowledge or intent, because of its nature, can and must often be proven by circumstantial evidence. United States v. Jones, 486 F.2d 476, 479 (8th Cir. 1973); Jackson v. United States, 330 F.2d 679, 681 (8th Cir. 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964); United States v. Jarboe, 374 F.Supp. 310 (W.D. Mo.1974); *see also,* United States v. Lawson, 483 F.2d 535, 536–538 (8th Cir. 1973).

■ From the record it is concluded that the evidence supported the Magistrate's finding that the defendant knew that the tear gas handgun was in his carry-on luggage at or about the time he attempted to board the aircraft. Based on the testimony of the defendant concerning his acquisition of the weapon and his prior conduct of "usually" keeping the gun in his travel bag (the carry-on bag involved in this case), it was not clearly erroneous for the Magistrate to find that the defendant knowingly possessed the tear gas handgun at or about the time that he attempted to board the air carrier.

7. See Footnote 1, *supra.*

### Deadly or Dangerous Weapon Construction

■ In enacting Section 1472(*l*), Congress did not attempt to define the terms "deadly or dangerous" weapon. In the House Report accompanying Section 1472(*l*), the following is stated:

"Consideration was given to attempting to define the term 'deadly or dangerous weapon.' However, this is not practicable. These terms have been used without definition in other provisions of title 18, United States Code, and in many State criminal laws. The courts will determine in each case, as it arises, whether the weapon in question was deadly or dangerous." H.R.Rep.No.958, 87th Cong., 1st Sess., U.S.Code Congressional and Administrative News pp. 2563, 2570 (1961).

So, in the process of construing the application of Section 1472(*l*) to the facts of a particular case, courts must be guided by the established principle that criminal statutes are to be strictly construed, both with respect to the act charged and the offense and penalty imposed. United States v. Campos-Serrano, 404 U.S. 293, 92 S.Ct. 471, 30 L. Ed.2d 457 (1971); Pierce v. United States, 314 U.S. 306, 62 S.Ct. 237, 86 L. Ed.2d 226 (1941); United States v. Dishman, 486 F.2d 727, 730 (9th Cir. 1973); United States v. Wray, 369 F. Supp. 118 (W.D.Mo.1973). Further a criminal statute cannot be extended by intendment. The act or acts proved must be plainly and unmistakably within the scope of the offense as defined in the statute. United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127 (1936). Moreover, any ambiguity or doubt concerning the scope of the statute should be resolved in favor of the defendant. United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

A review of the applicable authorities establishes that courts have distinguished objects that are "deadly or dangerous" weapons *per se* and other objects that by reason of their use may become "deadly or dangerous" weapons.

Some courts have determined that for purposes of Section 1472(*l*), a proscribed weapon must be "deadly or dangerous" as a matter of law. *See, e. g.,* United States v. Dishman, *supra;* United States v. Margraf, *supra* (dissenting opinion); *see also,* United States v. Davis, 429 F.2d 552 (8th Cir. 1970).[8] In *Dishman,* the Court of Appeals for the Ninth Circuit determined that a proscribed weapon must be *per se* or inherently "deadly or dangerous" through its construction. In other words, the weapon must be "one likely to produce death or bodily injury" as measured by the inherent capacity of the object in question.

In the dissenting opinion in *Margraf,* Chief Judge Seitz concluded that an object that is specifically proscribed by law in the state of departure or destination as being a "deadly or dangerous" weapon is considered deadly or dangerous *per se,* thereby attaching a presumption of knowing possession of such a weapon.

Other courts have determined that for purposes of Section 1472(*l*), a deadly or dangerous weapon is measured by the possible or probable *use* of the weapon to cause death or serious bodily injury or to place a reasonable person in fear of the weapon and thereby to induce submission. This use rationale was applied by the court in United States v. Ware, 315 F.Supp. 1333 (W.D.Okla. 1970) and in the majority opinion in United States v. Margraf, *supra.* The Court of Appeals for the Ninth Circuit in United States v. Cook, 446 F.2d 50 (9th Cir. 1971) did not state the rationale for its determination that a concealed but empty .38 caliber pistol was a

---

8. In United States v. Davis, 429 F.2d 552 (8th Cir. 1970), the United States Court of Appeals for the Eighth Circuit effectively rejected the use rationale and adopted the

*per se* rationale with respect to the question whether an unloaded .22 caliber pistol was a dangerous weapon under Section 1153, Title 18, United States Code.

dangerous weapon under Section 1472(*l*).

 Without attempting to distinguish or reconcile the *per se* or use standards noted above, it is concluded that, under the facts presented in the case at bar and considering both the *per se* (inherent) and use capacities of the weapon in question, the .22 caliber Vanguard tear gas gun loaded with one or more tear gas cartridges was a "dangerous" weapon within the meaning of Section 1472(*l*), Title 49, United States Code.

 Whether any given object is a "dangerous" weapon within the provisions of Section 1472(*l*) is a question of fact, to be determined by the fact finder under applicable legal standards. United States v. Margraf, 347 F.Supp. 230, 232 (E.D.Pa.1972); United States v. Davis, 429 F.2d 552, 556 (8th Cir. 1970); *see also,* H.R.Rep.No.958, 87th Cong., 1st Sess., U.S.Code Congressional and Administrative News pp. 2563, 2570 (1961). In the case at bar, the United States Magistrate was, and remains the fact finder.

From the record it is concluded that the evidence supported the Magistrate's finding that the weapon in question was in fact "dangerous" within the meaning of Section 1472(*l*). It was not clearly erroneous to find beyond a reasonable doubt that a loaded .22 caliber tear gas handgun, if fired in the face and in or near the eyes, ears or other sensitive tissue of a passenger or crew member of an air carrier, could cause serious bodily injury. The gunpowder detonated on the firing of the gun and the tear gas expelled could cause great bodily harm in the form of powder and chemical burns to sensitive body tissues, including, but not limited to, the eyes or ears, especially when fired at pointblank range. The obvious injurious propensities of the tear gas gun in question render the weapon dangerous under Section 1472(*l*), even considering the weapon's apparent inability to expel a solid projectile and any possible nonfirearm classification which other courts may have made with respect to tear gas guns and pens in different statutory and factual contexts. *See,* State v. Seng, 89 N.J.Super. 58, 213 A.2d 515 (1965); State v. Umbrello, 106 N.H. 336, 211 A.2d 400 (N.H.1965); United States v. Decker, 292 F.2d 89, 90 (6th Cir. 1961); United States v. Tot, 42 F.Supp. 252, 255 (D. N.J.1941).

The same weapon, loaded or unloaded, could cause fear and coerce submission by a passenger or crew member. It is not necessary or desirable, however, to determine as a matter of law whether an unloaded tear gas handgun is also a "dangerous" weapon within the meaning of Section 1472(*l*) for the tear gas handgun in the possession of the defendant in the case at bar was loaded with at least one explosive tear gas cartridge. In this connection, it is unnecessary to determine whether the adaptability of a simulated handgun for assault and intimidation makes it a "dangerous" weapon within the meaning of Section 1472(*l*).

A construction of the statute and a finding of fact contrary to the Magistrate's finding would frustrate the urgent remedial purposes of the law. *See,* United States v. Margraf, 347 F.Supp. 230, 232 (E.D.Pa.1972), affirmed, 483 F.2d 708, 711–712 (3rd Cir. 1973); H. R.Rep.No.958, 87th Cong., 1st Sess., U. S.Code Congressional & Administrative News p. 2563 (1961).

For the foregoing reasons, it is therefore

Ordered and adjudged that the judgment of conviction entered by the Chief United States Magistrate be, and it is hereby, affirmed.