**UNITED STATES of America,**
**Appellee,**

v.

**Nathaniel BROWN, Appellant.**

**No. 74–1418.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Dec. 12, 1974.

428

Thomas M. Larson, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Nathaniel Brown, a traveler enroute from Kansas City, Missouri, to Philadelphia, Pennsylvania, commenced preflight boarding procedures conducted by Trans World Airlines for passengers intending to board Flight No. 270 at Kansas City, Missouri, on August 13, 1972. Brown presented his flight bag to an employee of TWA for a routine search. The search of the flight bag disclosed a loaded Vanguard tear gas pistol and eight shells (five tear gas and three blank) among numerous items of personal belongings. Brown was arrested and charged with attempting to board an aircraft having "on or about his person a concealed deadly or dangerous weapon * * *" in violation of 49 U.S.C. § 1472(*l*).[1] In a court trial the United States Magistrate for the Western District of Missouri found Brown guilty and sentenced him to five years probation. On appeal, the district court affirmed the conviction, United States v. Brown, 376 F.Supp. 451 (W.D.Mo.1974), and Brown brought this appeal.

Prior to the oral arguments in this case, this court learned that in a recent similar prosecution under § 1472(*l*) the Solicitor General of the United States had recommended to the Supreme Court that it vacate the defendant's conviction

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. This statute reads in relevant part:

    [W]hoever, while aboard an aircraft being operated by an air carrier in air transportation, has on or about his person a concealed deadly or dangerous weapon, or whoever attempts to board such an aircraft while having on or about his person a concealed deadly or dangerous weapon, shall be fined not more than $1,000 or imprisoned not more than one year, or both.
    We note that the statute was slightly modified in the 93rd Congress. *See* Air Transportation Security Act of 1974, Pub.L. 93–366, § 203 (Aug. 5, 1974), 1974 U.S.Code & Cong. Admin.News 2482–2483.

and remand the case to allow the Government to move for dismissal. The Supreme Court accepted this recommendation. Margraf v. United States, 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1973), vacating and remanding 483 F.2d 708 (3d Cir. 1973). The Third Circuit subsequently remanded the case to the district court for dismissal. United States v. Margraf, 493 F.2d 1206 (3d Cir. 1974).

We believed that the circumstances disclosed in the instant case were sufficiently similar to the facts in *Margraf* to justify a similar disposition. *See* discussion, part II, *infra*. Consequently, at oral argument, we queried whether the Government might wish to move for dismissal in the instant case, and, at our suggestion, Government counsel contacted the Department of Justice for instructions. The Justice Department has declined to seek dismissal. Accordingly, we turn to an examination of the merits.

I.

This case was tried on the testimony of defendant-Brown and on a stipulation of facts between the parties. The defendant testified:

I * * * purchase[d] a tear gas gun some years back for the purpose of scaring dogs away. In Philadelphia we have numerous vicious dogs that are allowed to run loose in the city streets, and I have been chased by a dog before, and I bought it to—the tear—I bought the tear gas gun to scare away dogs. And I usually kept it in a—in a d—blue travel bag that I had with me.

Although Brown was aware that federal law prohibited anyone from carrying a dangerous and deadly weapon aboard an airplane, he was not fully aware that the tear gas pistol was in his carry-on bag when he presented it to airline personnel for inspection.

The parties by stipulation agreed to the following facts:

1. On August 3, 1972, shortly before 5:00 p.m., defendant Nathaniel Brown presented himself at Gate 7–8 for the purpose of boarding Trans World Airlines Flight 270 for a flight from Kansas City, Missouri, to Philadelphia, Pennsylvania. At that time he was screened by the magnetometer for firearms on his person. At the same time a separate and routine search of his flight bag was made by an employee of Trans World Airlines, in the course of which a loaded Vanguard tear gas pistol and eight shells (five tear gas and three blank) were found beneath numerous items of personal belongings.

2. This search of defendant's flight bag was routine in that a search of the carry-on luggage for all passengers boarding Flight 270 was then being conducted, and the defendant was not the first to be searched.

3. Prior to the search defendant had presented his ticket to the TWA agent and had been furnished with a boarding pass for Flight 270.

4. Defendant at no time hereinmentioned aroused the suspicion of the TWA employees or the U.S. Marshals. Defendant was not stopped and searched because he fit the so-called "profile". Defendant made no attempt to hide, to use or to reach for the tear gas gun in his flight bag.

5. The tear gas pistol in question is incapable of firing any kind of solid projectile and it is only capable of firing a dose of tear gas in gaseous form, or a blank cartridge. The tear gas gun is incapable of accepting into its chamber a bullet of any calibre and is not amenable to modification to accept such ammunition in that the cylinder is so constructed as to block the insertion of regular ammunition. Moreover, the barrel of the tear gas gun in its present form contains a metal piece which is apparently the bottom part of the sight at the top of the barrel. Finally, the tear gas gun is constructed of such light metal as to be dangerous to the person who might attempt to fire regular ammunition through

the barrel if the cylinder could be modified.

6. The defendant's character is good. He is the assistant pastor of St. Mark's Christian Methodist Episcopal Church, 1520 N. Marshall St., Philadelphia, Pennsylvania, and pastor of the St. James Station Circuit Mission of the Philadelphia District of the New York-Washington Annual Conference of the Christian Methodist Episcopal Church.

■ At the close of the evidence Brown moved for a judgment of acquittal asserting that the tear gas pistol was not a *per se* "deadly or dangerous weapon" and that the failure of the Government to introduce any evidence that appellant intended to use the pistol in a dangerous manner precluded, as a matter of law, a finding that the pistol was "deadly or dangerous" within the meaning of § 1472(*l*). In affirming the magistrate's rejection of this contention, District Judge Becker concluded that

> under the facts presented in the case at bar and considering both the *per se* (inherent) and use capacities of the weapon in question, the .22 caliber Vanguard tear gas gun loaded with one or more tear gas cartridges was a "dangerous" weapon within the meaning of Section 1472(*l*) * * *. [376 F.Supp. at 459.]

We agree with this conclusion for the reasons set forth in the district court's extensive opinion.

■ Although this agreement with the district court would ordinarily require an affirmance, under the circumstances of this case we deem it necessary to consider whether we should examine *sua sponte* an issue not raised before the magistrate, the district court, or this court. That issue is whether the tear gas pistol was actually "concealed" as required by § 1472(*l*). Under limited circumstances, Fed.R.Crim.P. 52(b) authorizes federal appellate courts to examine a critical issue not raised on appeal.

That rule reads:

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. [Fed.R.Crim.P. 52(b).]

As the Supreme Court has observed, this power may be invoked on appeal, *sua sponte*:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings. [United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).]

*See* Silber v. United States, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); Brotherhood of Carpenters v. United States, 330 U.S. 395, 412, 67 S.Ct. 775, 91 L.Ed. 973 (1947). *See generally* 3 C. Wright, Federal Practice and Procedure § 856 (1969).

This power to review issues not raised by the parties must be exercised only with great caution and its use is restricted "to avoid a miscarriage of justice." Johnson v. United States, 362 F.2d 43, 46 (8th Cir. 1966). See United States v. Atkinson, *supra*; United States v. Scott, 485 F.2d 576 (8th Cir. 1973), cert. denied, 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 292 (1974); United States v. Reed, 446 F.2d 1226, 1230 (8th Cir. 1971); United States v. Robinson, 419 F.2d 1109, 1111–1112 (8th Cir. 1969).

In determining whether to apply the plain error rule, we must consider whether an injustice has been done to defendant-Brown. Additionally, we must consider the effect of the application of the precedent established by the district court upon the millions of persons in this country who yearly travel in commercial aircraft.[2]

2. The statistics on air travel show that 181,423,433 persons boarded scheduled airlines for domestic travel in the United States during calendar year 1973. [CAB & FAA, Airport Activity Statistics of Certificated Route Air Carriers, Table 6, at 117 (Dec. 31, 1973).]

The district court opinion notes

> that for purposes of Section 1472(*l*), a deadly or dangerous weapon is measured by the possible or probable *use* of the weapon to cause death or serious bodily injury \* \* \*. [376 F.Supp. at 458.]

Such a rule of law in the context of the district court opinion carries the implication that an airline passenger violates federal law when carrying any object under cover, such as within a handbag or flight bag, which could potentially be used as a weapon even though that object is readily discoverable on the routine inspection now carried out at all commercial airports. Obviously, such a rule of law carries far-reaching consequences for the unwary and uninformed person who may travel by air. Indeed, the following individuals have already been prosecuted under this statute:

> 1) a musician-passenger carrying in his pocket a pocketknife used as a "tool," United States v. Margraf, 483 F.2d 708, 709 (3d Cir. 1973);
>
> 2) a passenger carrying in his jacket pocket a starter pistol, United States v. Dishman, 486 F.2d 727, 729 (9th Cir. 1973) (the appellate court reversed the defendant's conviction holding that a starter pistol was not a " 'deadly and dangerous' weapon per se");
>
> 3) a passenger carrying a tear gas pistol in his flight bag—the instant case.

Additionally, we surmise that under the rationale of the district court the typical airline passengers listed below might be subject to prosecution for carrying the following items under cover: 1) a woman carrying long and sharp knitting needles or a pair of scissors in her flight bag, *see* United States v. Margraf, *supra*, 483 F.2d at 712; 2) a boy scout carrying a hunting knife or hatchet in his backpack, *see id.*; 3) a mother accompanied by her child and carrying an authentic-looking toy gun in her purse or in the child's toy bag, *see* United States v. Dishman, *supra*, 486 F.2d at 732. This discussion demonstrates that the precedent established by this case as

well as affecting substantial rights of the appellant will also have a far-reaching public effect. The failure of the magistrate to consider the concealment issue was an obvious error. Because of the significance of this case to the public, we believe we should examine all relevant aspects of the case, including, on our own motion under Fed.R.Crim.P. 52(b), the issue of concealment of the tear gas gun.

The statute in question required the prosecution to prove that the defendant (1) attempted to board or did board a commercial aircraft while (2) carrying a "deadly or dangerous weapon" which was (3) "concealed \* \* \* on or about his person." 49 U.S.C. § 1472(*l*). *See* United States v. Dishman, *supra*, 486 F.2d at 730; United States v. Margraf, *supra*, 483 F.2d at 709.

The Government has established the first two elements in this case. However, on the concealment issue, the stipulation entered into by the Government and Brown specifically recites that the "[d]efendant made no attempt to hide, to use or to reach for the tear gas gun in his flight bag" and that the pistol was "found beneath numerous items of personal belongings." The magistrate, the factfinder in this case, made no express finding of concealment but merely stated an overall conclusion that the tear gas pistol found in the flight bag "was a concealed dangerous weapon." The district court, acting in the capacity of an appellate court without *de novo* factfinding powers, relegated the element of concealment to the following parenthetical statement: "(The fact that the handgun was concealed is amply proved.)" United States v. Brown, *supra*, 376 F.Supp. at 457. In light of the stipulation, we cannot accept this statement as dispositive of the concealment issue.

■ In examining what constitutes "concealment," we are cognizant that the circumstances surrounding preflight boarding procedures of aircraft have been drastically altered between the time of the passage of § 1472(*l*) in 1961

and the time of the incident before us in August 1972. In 1961, prior to the institution of compulsory preflight boarding examination of luggage and person, any nondisclosure to airline personnel of an object considered to be a deadly or dangerous weapon could properly constitute a concealment of the weapon within the purview of the statute. *Cf.* United States v. Ware, 315 F.Supp. 1333 (W.D. Okl.1970); United States v. Brown, 305 F.Supp. 415 (W.D.Tex.1969). However, by August 1972, according to the stipulation; passengers intending to board commercial aircraft at the Kansas City airport were required, as a precondition for air travel, to present their carry-on luggage to airline personnel for a routine search and to present themselves for magnetometer detection.[3] The history of governmental regulations leading to procedures such as those in operation at the Kansas City airport for the purpose of preventing aircraft piracy and hijacking has been documented and explained in United States v. Davis, 482 F.2d 893 (9th Cir. 1973).

The institution of these preflight boarding procedures, such as those carried out during the incident in question, requires a court to consider whether a passenger who voluntarily tenders his hand luggage to a qualified inspector is concealing any item which will be observed upon routine inspection. Ordinarily, the act of a passenger presenting his hand luggage to responsible airline personnel for inspection suggests an intent to disclose rather than to conceal those items within the bag which will come into view on ordinary inspection.

██ Here, the parties have stipulated that the search was routine and that the defendant made no attempt to hide the tear gas gun although the pistol and shells were found beneath numerous items of personal belongings. In amplification of the stipulation, the defendant testified that he had not completely unloaded his flight bag during his travels, but merely removed the items he needed and repacked them for his return trip, without being fully aware that the tear gas gun had been left in his flight bag.

The circumstances apparent on the record here are more suggestive of a lack of concealment than the facts related in United States v. Margraf, *supra*, 483 F.2d at 709, where the defendant, upon inquiry, denied carrying "a knife, a weapon, or any other large metallic object," or in United States v. Dishman, *supra*, 486 F.2d at 729, where the passenger, who was carrying a starter pistol, initially denied carrying any metal object. Such a denial, which is not present in the instant case, may imply an intent to conceal. Although neither *Margraf* nor *Dishman* discussed the concealment issue, the convictions were subsequently vacated or reversed on other grounds.

We recognize that concealment can occur even though an airline passenger tenders his hand luggage for inspection. A potentially dangerous object may be hidden in a false bottom or secret compartment; a knife or gun may be wrapped in a wet diaper; or other evidence may exist indicating concealment. But no such circumstances are apparent from the record before us. Thus, in the absence of an adequate record and a specific finding by the magistrate, we cannot assume that concealment existed here. Accordingly, we hold that the conviction must be set aside and the case remanded. At the new trial, either party should be permitted to introduce further evidence, if any is available, bearing upon this question.[4]

---

3. As we understand it, a magnetometer is an electronic device designed to disclose the presence of certain metallic substances typically found in larger weapons. The same metallic substances are found in items which are not weapons, and the magnetometer does not distinguish between them. Nor does it detect small metal items.

4. From our examination of the record, it appears that defendant-Brown's counsel sought to contest the criminal charge solely on the basis that the tear gas pistol did not fall within the "dangerous or deadly weapon" terms of the statute. Perhaps for that reason the Government did not seek to cross-examine Brown.

## II.

Under the circumstances of this case, we deem it appropriate to comment on our suggestion to Government counsel at oral argument that a dismissal of the prosecution might be appropriate in light of the Government's action in Margraf v. United States, *supra*.

The facts in *Margraf* show that the defendant triggered a positive response in walking through a magnetometer device prior to boarding an airline flight. After Margraf specifically denied that he was carrying a "knife, a weapon, or any other large metallic object" on his person, 483 F.2d at 709, a security officer searched him and discovered a 7½ inch-long folding pocketknife with a 3¼ inch blade. As in the case before us, Margraf was charged with attempting to board an aircraft carrying a concealed or dangerous weapon. At his trial Margraf, a member of a rock music band, testified that he had carried the knife for a long time and used it as a tool on various musical instruments. He further stated that he was unaware that it was illegal to carry such a pocketknife aboard a plane and would have willingly surrendered the knife had he realized that the security officer's inquiry covered such a pocketknife. Margraf was convicted and the Third Circuit Court of Appeals, sitting *en banc*, affirmed the conviction with three judges dissenting. United States v. Margraf, 483 F.2d 708 (3d Cir. 1973).

The Solicitor General, stating that the prosecution in *Margraf* "was contrary to the policy of the Department of Justice," recommended to the Supreme Court that it grant certiorari and vacate Margraf's conviction because the pocketknife carried by him did not clearly come within the purview of the term "weapon or dangerous object" as defined by guidelines of the Federal Aviation Administration (FAA),[5] promulgated subsequent to the incident. Memorandum for the United States at 3–4, Margraf v. United States, 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1973). The Solicitor General represented to the Court:

> Petitioner's knife could lawfully be possessed and carried by him in both Pennsylvania, where he sought to board the aircraft, and California, his destination * * *. It would thus not be considered a "weapon or dangerous object" under the [FAA] guidelines * * *.

The Department of Justice has therefore concluded that prosecutions under Section 1472(*l*) should not be under-

5. The FAA guidelines read as follows:

> The following guidelines are furnished to airport operators, air carriers, law enforcement personnel, and others involved in preboard screening of passengers in making a reasonable determination of what property in possession of a passenger should be considered as a weapon or dangerous object. FIREARMS—Including starter pistols, compressed air or BB guns and flare pistols. KNIVES—All sabres, swords, hunting knives, and such other knives considered illegal by local law. BLUDGEONS—Blackjacks, billy clubs, or similar instruments. OTHER DEVICES OR OBJECT—Even though not commonly thought of as a dangerous weapon but the possession of which supports the reasonable presumption that it could be used as weapon, such as ice picks, straight razors, elongated scissors, and the like. Any questionable device or object to include toy or dummy weapons or grenades should be treated as a dangerous article.

> The following objects should also be prohibited in the interest of air security: EXPLOSIVES/AMMUNITION—All types of explosives, ammunition, incendiaries, and fireworks whether commercially manufactured, homemade, or any combination of components to produce same. GASES AND CHEMICAL AGENTS—All tear gas, mace, and similar chemicals and gases whether in pistol, pen, canister, or other container.

> In those instances where an undeclared firearm or other obviously *dangerous weapon* is discovered concealed in a carry-on bag or on the person of a passenger, appropriate law enforcement authorities must be notified. ATA and AOCI requested to pass info through their channels.

> Original signed by,
> JAMES T. MURPHY.

> 8 February 1973.

> These guidelines are also reproduced in United States v. Margraf, 493 F.2d 1206, 1207 n. 1 (3d Cir. 1974).

taken with respect to objects not proscribed under the guidelines, at least in the absence of unusual, aggravating circumstances, or where local law may be unduly lax in regulating the carriage of knives or other objects. Since the present case presents no aggravating circumstances and involves no unduly lax local laws, petitioner should not be subject to prosecution. [Memorandum for the United States, *supra*, at 4–5 (footnote omitted).]

█ In examining this same guideline, we observe that a tear gas pistol does not come within the description of items to be "considered as a weapon or dangerous object" but instead is classified as one item among several listed under the heading "Gases and Chemical Agents" which merely are to be "prohibited in the interest of air security." The guideline calls for notification of law enforcement officers only upon discovery of "an undeclared firearm or other obviously *dangerous weapon* \* \* \*." (Emphasis in original). Since a tear gas pistol, such as the one carried by appellant, does not appear to come within the classification of a "weapon or dangerous object" under the guidelines, the rationale of the Solicitor General in seeking a dismissal in *Margraf* could justify similar treatment for Brown. However, the decision to prosecute is a matter within the discretion of the Government and we do not attempt to supervise the Department of Justice in the exercise of its prosecutorial discretion. *See* United States v. Brown, 481 F.2d 1035, 1043 (8th Cir. 1973).

Reversed and remanded.

MATTHES, Senior Circuit Judge (dissenting).

In disagreeing with the result reached by the majority, I deem it appropriate to emphasize what is not involved in this appeal. Appellant does not claim that he has been deprived of any constitutional right; that he was subjected to an unreasonable search or seizure; that he was illegally arrested, or that he was deprived of his fifth amendment rights.

My brethren do not rest their opinion on constitutional grounds.

In searching for a basis to reverse, my brethren have resorted to the "Plain Error" rule and by that vehicle have concluded that prejudicial error resulted from the failure of the magistrate and the district judge to consider the concealment issue. With due deference, I am convinced that this record does not reveal plain error or, for that matter, any error as to concealment or any other element of the offense. Therefore, I dissent.

I recognize that *in exceptional circumstances,* this court may sua sponte notice error to which no exception has been taken, but as the majority recognizes, this power to review issues not raised by the parties must be exercised only with great caution. Surely the rule does not contemplate reversing simply because the appellate court is disturbed by the initiation of the prosecution in the first instance and the ensuing judgment of conviction.

The magistrate in this case, the Honorable Calvin K. Hamilton, is faulted for not considering the concealment issue. Page 431, majority opinion. However, consideration of the proceedings before Judge Hamilton demonstrates not only that the concealment issue was not presented to the magistrate, but that in fact the appellant conceded the subject weapon was in the hand luggage when appellant attempted to board the airplane. This is clear from the first and second paragraphs of the written stipulation filed in the magistrate court, reproduced at pages 429–430 of the opinion of the majority. Moreover, an admission was made by the appellant before the magistrate which to my mind clearly demonstrates that the appellant recognized that the subject weapon was in his hand luggage and for that reason waived any right to consideration of the element of concealment. After the written stipulation had been filed, and during the course of the proceedings, the following occurred:

THE COURT (Magistrate Hamilton): . . . Will the parties stipulate for certain so this record will be clear that the defendant was attempting to board an aircraft that was being operated by an air carrier in trans—in air transportation.

MR. ELDREDGE (Counsel for appellant): We will so stipulate.

.    .    .    .    .

THE COURT: And one other thing that I want to clear up with regard to this Stipulation. Perhaps it'll be cleared up by the defendant's testimony, but was it—the defendant was carrying the flight bag in which was found the Vanguard tear pistol and the shells in his hand—carrying it in his hand at the time that he was going through the gate—going through the magnetometer.

MR. ELDREDGE: That's correct, your Honor.

THE COURT: And it was then in his—in or—in his person—I mean the bag itself in which was the—in which was contained the tear gas pistol was being carried by the defendant as he was boarding the—attempting to board the aircraft and in so doing was—went through the magnetometer.

MR. ELDREDGE: That's correct.

Subsequent to submission of the case to the magistrate, the appellant filed an exhaustive memorandum in support of his motion for judgment of acquittal. The only point raised was

The Government's proof leaves reasonable doubt as a matter of law that the .22 calibre Vanguard pistol designed to fire only blank and tear gas cartridges as a "dangerous or deadly" weapon within the purview of 49 U.S.C. § 1472(*l*). (Taken from appellant's brief before the magistrate.)

As thus posited, it is convincingly clear that the appellant's only defense before the magistrate focused upon the characteristics of the weapon, that is, whether it was the type proscribed by the applicable statute. And, it is equally clear to me that the appellant implicitly if not explicitly conceded before the magistrate that the weapon was in fact concealed.

Upon due consideration, Judge Hamilton filed findings of fact and conclusions of law and held that "the .22 caliber Vanguard revolver found in the defendant's hand luggage was a concealed dangerous weapon within the purview of 49 U.S.C. § 1472(*l*)."

Another undisputed link in the chain of events further dissipates the claim of plain error. On appeal to the district court, Chief Judge Becker afforded appellant an "opportunity to file additional contentions and authorities." Counsel for appellant declined this offer and the case was submitted on the record of the magistrate court. As reference to Judge Becker's opinion will disclose, the judge considered two points: 1) the requirement of knowing possession, 376 F.Supp. at 454–458; 2) whether the pistol "was a deadly or dangerous weapon." 376 F.Supp. at 458–459. In an exhaustive and soundly reasoned opinion, Judge Becker resolved both questions against appellant. Since the element of concealment had never been questioned, Judge Becker made short shrift of that point, but did find that the proof showed the weapon had been concealed. 376 F.Supp. at 457.

Further support for my position that there is no basis for applying the plain error rule, is found in appellant's brief filed in this court. The brief states, "the defendant concedes that the record supports the finding that the defendant did know that the tear gas pistol was in his travel bag." Pp. 15 and 16 of appellant's brief. Appellant then proceeded to attempt to develop that the district court was wrong in holding that the Government was not required to prove that appellant knew that the tear gas pistol was dangerous.

Notwithstanding all of the foregoing undisputed circumstances, my brethren conclude the magistrate was obviously in error for not considering whether the weapon was concealed.

With all due respect, it is quite evident to me, at least, that the majority has

overturned the previous findings of fact of the magistrate and district court without expressly saying so. It is apparent from a reading of the majority opinion that the weapon was in fact concealed from view. But in overturning the findings of fact reached by the magistrate and affirmed by the district court, the majority has injected an element previously foreign to the case; to wit, whether appellant *intended* to conceal the subject weapon. To me, the magistrate's holding that the element of intent must be proven is a departure from the plain wording of the Act, and if the opinion stands, the Government will be under a heavy burden in cases where concealment is an issue. As I see it, the Government was required to prove three elements: 1) that appellant was attempting to board an aircraft; 2) that he was in possession of a dangerous or deadly weapon (the majority concedes one and two were proved); 3) the weapon was concealed.

This record satisfies me that all three elements were established. The magistrate and the district court so found and, consequently, I would affirm.

Finally, I am at a loss to understand the purpose of a remand for another trial to resolve the concealment issue. The written and oral stipulations and the testimony of appellant stand undisputed. There is no indication of the existence of additional relevant evidence. Thus, I am constrained to believe the remand for another trial on the one issue will prove to be an exercise in futility and will serve only to further burden an already overworked court. I suspect another trial will produce the same result. Where, as here, the case has been fully explored, tried, and decided on the facts and in accordance with the law, we as the reviewing court should exercise restraint and refrain from sending the case back for another trial.