UNITED STATES of America, Plaintiff-Appellee,

v.

Todd Kevin WALLACE, Defendant-Appellant.

No. 85–5137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1986.

Decided Sept. 30, 1986.

Enrique Romero, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Joel Levine, Stilz, Boyd & Levine, Los Angeles, Cal., for defendant-appellant.

Before SCHROEDER and HALL, Circuit Judges and BROWNING *, District Judge.

* Hon. William D. Browning, U.S. District Judge, District of Arizona, sitting by designation.

WILLIAM D. BROWNING, District Judge:

Todd Kevin Wallace appeals from a jury verdict convicting him of violating 18 U.S.C. § 2314, by transporting stolen goods having a value in excess of five thousand dollars in interstate commerce, and convicting him of violating 49 U.S.C. § 1472(*l*), by boarding an airplane while concealing a dangerous weapon. We affirm both convictions.

## I

■ The threshold issue raised by this appeal is whether Wallace's speedy trial rights were violated when the trial judge ordered him to stand trial within thirty days of the filing of a substantially similar, superseding indictment. The Speedy Trial Act, however, does not require that the thirty day trial preparation period begin anew upon the filing of a substantially similar, superseding indictment. *United States v. Rojas-Contreras,* — U.S. —, 106 S.Ct. 555, 557–58, 88 L.Ed.2d 537 (1985).

## II

The second set of issues raised on appeal involves Wallace's allegation that the government failed to sustain its burden of proving that the twenty-five unissued airline tickets, the stolen goods at issue in Wallace's conviction under 18 U.S.C. § 2314, had a value in excess of five thousand dollars.[1]

Two different methods for placing a value on the stolen airline tickets were introduced into evidence at trial.[2] The first method estimated the value of the stolen tickets based on the value that blank airline tickets have on the black market. That evidence indicated that the blank tickets could have been sold for between twenty and twenty-seven dollars apiece. The second method estimated the value of the stolen tickets based on the average loss that airlines sustain on stolen tickets that are later exchanged for travel or refunds. That evidence indicated that the average loss per ticket ranged from three hundred and seventy nine dollars ($379.00) per ticket to one thousand dollars ($1,000.00) per ticket. Evidence was also admitted to show that the fraudulent use of a blank airline ticket is relatively simple, involving no special equipment and merely requiring that appropriate flight numbers and other readily available travel codes be filled in.

In connection with this evidence, Wallace contends that the trial court erred in admitting expert testimony on the amount of monetary loss suffered by the airlines due to flights taken on stolen tickets because that testimony was misleading and prejudicial.

■ A trial court's decision to allow expert testimony is reviewed under a manifest error standard. *United States v. Fleishman,* 684 F.2d 1329, 1335 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Without expert testimony on the usual value of stolen tickets, it would have been impossible to determine the specific value of the stolen goods. *United States v. Luckey,* 655 F.2d 203, 205 (9th Cir.1981). Evidence showing the potential value of the airlines tickets is particularly appropriate when filling out the tickets does not require any special expertise or equipment. *Cf. Jalbert v. United States,* 375 F.2d 125, 126 (5th Cir.), *cert. denied,* 389 U.S. 899, 88 S.Ct. 899, 19 L.Ed.2d 221 (1967) (holding that the value

---

1. 18 U.S.C. § 2314 provides, in pertinent part, that "[w]hoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; ...

. . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. At the trial of this matter, the parties stipulated that Wallace stole approximately twenty-five blank airline tickets from the airline ticket counter prior to boarding an airplane in Las Vegas, Nevada destined for San Bernardino County, California. The parties also stipulated that the airline tickets were goods or merchandise within the meaning of 18 U.S.C. § 2314 and that the tickets were transported in interstate commerce within the meaning of the statute.

of stolen blank money orders may be established by circumstantial evidence showing the market value for filled in money orders and the fact that the defendants had the necessary equipment to fill in the money orders and to make the completed orders appear valid). Under these standards, the trial court did not manifestly err by admitting expert testimony of the usual loss sustained by the airlines on filled in, stolen tickets.

■■ Wallace further contends that the government did not sustain its burden of establishing the jurisdictional element of value contained in 18 U.S.C. § 2314. Under that statute, the government has the burden of introducing sufficient relevant evidence from which the jury could reasonably find that the value of the stolen tickets exceeded five thousand dollars beyond a reasonable doubt. *United States v. Dior*, 671 F.2d 351, 357 (9th Cir.1982). The stolen property must have been shown to have had the requisite value at any time during the period of possession or concealment. *Luckey*, 655 F.2d at 205. In determining whether or not the evidence is sufficient to support the verdict, all conflicts are resolved in favor of the verdict. *United States v. Ramos*, 558 F.2d 545, 546–47 (9th Cir.1977).

■■ In this case, we find that evidence, properly admitted at trial, indicating the ease with which blank airline tickets can be filled in to make the tickets appear valid, provided a reasonable basis for the jury to find that the tickets in Wallace's possession had a value equal to the losses that the airlines usually sustain on stolen tickets. *See United States v. Drebin*, 557 F.2d 1316, 1331 (9th Cir.1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401

(1978) (holding that when stolen goods have no readily ascertainable value, the factfinder may consider any reasonable method by which to ascribe a monetary worth to the goods). Because the lowest estimated average loss on stolen tickets multiplied by the number of stolen tickets exceeds five thousand dollars, we hold that the government sustained its burden of proving the jurisdictional value of the stolen property beyond a reasonable doubt.

■■ Wallace also urges that the trial court improperly instructed the jury on the standards for determining the value of the stolen tickets. A jury instruction will be upheld if it is adequate to guide the jury and is not misleading. *United States v. Bradshaw*, 690 F.2d 704, 710 (9th Cir.1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3593, 77 L.Ed.2d 1392 (1983). We find that the jury instruction given on value [3] was not misleading or inadequate to guide the jury.

### III

The final issues raised on appeal concern Wallace's conviction pursuant to 49 U.S.C. § 1472(*l*) for boarding a plane with a concealed dangerous weapon.[4]

■■ Wallace initially contends that the trial judge erred in determining that the question of whether an electronic taser or stun gun is a dangerous weapon is an issue of law to be resolved by the court. If, however, an instrument is designed for the purpose of producing death or great bodily harm, the question of whether the instrument is an inherently dangerous weapon may be determined as a matter of law. *See United States v. Dishman*, 486 F.2d 727, 732 (9th Cir.1973). Moreover, an instrument that has been designed to pro-

---

**3.** The jury instruction given on value read as follows:

"Value as used in these instructions means that amount you determine the 25 blank tickets alleged in the indictment could have been exchanged for in goods or services provided by airlines in the operation of their air travel business."

**4.** 49 U.S.C. § 1472(*l*) provides, in pertinent part, that whoever "while aboard, or while attempt-

ing to board [any aircraft in, or intended for operation in air transportation or intrastate air transportation] has on or about his person or his property a concealed deadly or dangerous weapon, which is, or could be, accessible to such person in flight;

. . . .

shall be fined not more than $10,000 or imprisoned not more than one year, or both."

duce death or great bodily harm may be held to be an inherently dangerous weapon as a matter of law if the instrument is ready to be used to produce bodily harm or may be quickly adapted to produce bodily harm. *Id.* Accordingly, we hold that the trial court correctly found that the question of whether a stun gun is a dangerous weapon may be determined as a matter of law.

■ Wallace further contends that the trial court erred when it found that a stun gun is a dangerous weapon proscribed under 49 U.S.C. § 1472(*l*). Wallace urges that the statutory prohibition against deadly or dangerous weapons only prohibits weapons that are likely to produce death or great bodily harm and does not apply to a weapon such as a stun gun that incapacitates its victims temporarily and does not inflict serious permanent harm.

Wallace's position is without merit. First, evidence was introduced at trial indicating that stun guns may cause permanent injury to eyes and that a single stun gun may incapacitate twenty to forty people at a time. *Cf. United States v. Brown,* 376 F.Supp. 451, 459 (W.D.Mo.), *rev'd on other grounds,* 508 F.2d 427 (8th Cir.1974) (relying on similar evidence to find that tear gas is a dangerous weapon under 49 U.S.C. § 1472(*l*)). Moreover, the potential for devastating injury that is present during even a temporary incapacitation of key personnel aboard an aircraft in flight requires courts applying the statutory prohibition against a deadly or dangerous weapon to consider both the transitory and permanent nature of the weapon's effect. *See* H.Rep. No. 958, 87th Cong., 1st Sess. 10, *reprinted in* 1961 U.S. Code Cong. & Ad. News 2563, 2570. Finally, a stun gun may be found to be a dangerous weapon because display of the gun is likely to provoke fear in the surrounding passengers creating "an immediate danger that a violent response will ensue." *McLauglin v. United States,* — U.S. —, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986) (interpreting the statutory requirement of a dangerous weapon in 18 U.S.C. § 2113(d)).

■ Wallace's final contention on appeal is that the trial court erred in excluding evidence indicating that Wallace did not intend to conceal the stun gun as he boarded the plane. Wallace claims that he sought to introduce evidence at trial that he boarded a plane the day before the arrest with a stun gun and that the security officers inspected the gun and allowed him to board with it. Accordingly, Wallace reasons that he could not have been attempting to conceal the stun gun on the day he was arrested, because he had no reason to believe that he would be prohibited from taking the weapon on board the aircraft.

Wallace's assertion that he sought to introduce this evidence is contradicted by his statement that the parties stipulated to the existence of all elements necessary for a conviction under 49 U.S.C. § 1472(*l*), with the one exception concerning the question of whether a stun gun is a dangerous weapon within the meaning of the statute. Brief for Appellant at 7. Accordingly, the Government opposes Wallace's attempt to raise the question of his intent to conceal the weapon on appeal because the record does not show any effort to introduce evidence on non-concealment at trial. *See United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) (holding that errors not raised before the trial court will not generally be considered on appeal).

Assuming, however, that this issue is properly raised on appeal, Wallace's good faith belief that it was not illegal to carry a stun gun onto the aircraft is not an adequate ground for reversal. *See United States v. Flum,* 518 F.2d 39, 45 (8th Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975) (holding that it is the fact of concealment, and not the intent to conceal, that is prohibited under 49 U.S.C. § 1472(*l*)). The Government presented a submissible case when it established that Wallace boarded the aircraft with a danger-

ous weapon about his person that was hidden from view. *Id.*

AFFIRMED.