**UNITED STATES v. TOT.**
No. 197.

District Court, D. New Jersey.
Dec. 6, 1941.

Charles M. Phillips, U. S. Atty., of Trenton, N. J., and Irwin L. Langbein, Sp. Asst. to the Atty. Gen., of Washington, D. C., for the United States.

George R. Sommer, of Newark, N. J., for defendant.

254

**WALKER, District Judge.**

The above entitled cause arises out of the Federal Firearms Act of 1938[1]. An original indictment[2] was returned on November 15, 1938. A petition to suppress evidence on the grounds of unconstitutionality of the statute and illegality of the search was filed by the defendant on December 1, 1938, and was denied on August 14, 1939.[3]

The original indictment was nolle prossed on January 13, 1941.

The present (superseding) indictment was returned on July 13, 1940, correcting errors of transcription in the verbiage of the original indictment. It alleges in substance that the defendant on a named date did unlawfully receive a "certain firearm, to wit, a 32 caliber Colt Automatic pistol", theretofore shipped in interstate commerce, the defendant theretofore having been convicted of a crime of violence. The statute prohibits any such person from receiving a "firearm" so shipped and provides that possession of a "firearm" by any such person shall be presumptive evidence of unlawful receipt after such shipment.[4]

A demurrer, raising the question of statutory construction was denied on January 3, 1941, on procedural grounds.[5]

Trial was had before the court and jury on January 22, 1941, and a verdict of guilty returned.

### Motion "A"

During the trial the defendant contended the "32 caliber Colt Automatic pistol" recited in the indictment and admitted in evidence is not a "firearm" within the statute since the statutory definition of "firearm" restricts the term to silenced or muffled guns.

Decision was reserved pending ballistic expert testimony, which was received on January 27, 1941, and a 32 caliber Colt Automatic with silencer attached was tested on February 13, 1941.

Although the testimony received on January 27, 1941, teaches us and the test held on February 13, 1941, demonstrates that a silencer can be attached to a 32 caliber Colt Automatic and a 32 Colt Automatic can be and was fired repeatedly with a silencer attached, the court deems it advisable to pass on the question whether or not the statute is restricted to a "firearm" designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer.

The defendant's contentions are: First, the statutory reference to a silencing device, "a firearm muffler or firearm silencer", is not set off by punctuation from the preceding description of a gun, "any weapon * * * designed to expel a projectile * * * by the action of an explosive". Second, the intervening participle is the conjunctive "and" rather than the disjunctive "or".

Punctuation is one of the minor guides to construction. It is not controlling and it will always give way in favor of the legislative intent and the sense of the words used.[6] The conjunctives "and" and "or" normally retain their ordinary meanings when used in a statute, but there is no rule of construction which demands that they do so throughout perversion of sense or intent.[7]

The rule against statutory interpretation creative of "constructive offenses", emphasized by counsel for the defendant, does not operate to preclude inquiry into the sense and intent of criminal statutes but merely defeats ascertained sense or intent in "instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context."[8] Criminal statutes like others "are not to be strained either way."[9]

---

[1] Act of June 30, 1938, Ch. 850, 52 Stat. 1250–1252, 15 U.S.C.A. §§ 901–909.

[2] #8857-b.

[3] United States v. Tot, D.C.N.J., 28 F. Supp. 900.

[4] 15 U.S.C.A. § 902(f).

[5] United States v. Tot, D.C.N.J., 36 F. Supp. 273.

[6] For examples of Indictments sustained through disregard of punctuation of the Federal statute under which they were drawn see United States v. Lacher, 134 U.S. 624, 628, 629, 10 S.Ct. 625, 33 L. Ed. 1080; United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S. Ct. 42, 77 L.Ed. 175.

[7] United States v. Wight, D.C.E.D. Mich., 38 F. 106. Indictment sustained by reading "or" for "and". Construction followed by the Supreme Court in Wight v. Nicholson, 134 U.S. 136, 10 S.Ct. 487, 33 L.Ed. 865.

[8] Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 202, 71 L.Ed. 443.

[9] United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 42, 67 L.Ed. 149.

█ The Supreme Court answered the argument that the meaning of the statute in question is too plain and unambiguous to allow resort to any extraneous aids to construction when it said "It would be anomalous to close our minds to persuasive evidence of intention on the ground that reasonable men could not differ as to the meaning of the words. Legislative materials may be without probative value, or contradictory, or ambiguous, it is true, and in such cases will not be permitted to control the customary meaning of words or overcome rules of syntax or construction found by experience to be workable; they can scarcely be deemed to be incompetent or irrelevant. [Case cited]. The meaning to be ascribed to an Act of Congress can only be derived from a considered weighing of every relevant aid to construction."[10]

█ The instant statute was Bill S. 3 in both the 74th and 75th Congresses. It is notable that in all the debates on the statute, while it was in process of enactment, its application to nonsilenced guns was not questioned. On the contrary, there are comments both approving and disproving on the fact that the statute applies to a "gun of any type", and that it contains "the broadest definition that we could make",[11] that it includes "the ordinary duck-shooting gun, the gun with which the farmer's boy shoots the rabbit, the squirrel gun, the target gun"[12]. The air gun and possibly the tear gas gun were the only ones intended to be excluded[13] presumably because air is not an "explosive" and tear gas is not a "projectile".

The earlier National Firearm Act 1934[14] roughly in pari materia was under discussion during the enactment process of the 1938 Act.[15] The earlier statute brought the silencer within its sharply restricted definition of "firearms" not as an essential of the weapon but as an independent sort of weapon. This is the construction which the government contends is proper for the 1938 Act. Indeed, when you compare the successive forms of the definition in S. 3 with those of the 1934 Act, you see a not too artful simplification of punctuation and verbiage.[16]

The juxtaposition of the successive drafts of the 1938 Act, as more particularly set forth in Footnote No. 16, demonstrates the insignificance of the punctuation and participle upon which the defendant relies, by showing the casual and unpurposive manner in which they slipped into the statute. The first draft of S. 3, set off the weapon clause from the silencer clause by a semicolon, and like the 1934 statute contained no "part or parts" clause. The elimination of the semicolon punctuation in the second draft could cause little confusion, for there

---

[10] United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 1038, 84 L.Ed. 1356. See, also, United States et al. v. American Trucking Ass'ns, Inc., et al., 310 U. S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

[11] House Subcommittee Hearings, June 22, 1937.

[12] Senate Committee Hearings April 16, 1935, page 10.

[13] Senate Committee Hearings, April 16, 1935, pages 43, 56 and 57.

[14] Act of June 26, 1934, 48 Stat. 1236, 1240; Definition Section as subsequently amended now Internal Revenue Code Section 2733.

[15] House Subcommittee Hearings, June 22, 1937, page 12; Senate Committee Hearings, April 16, 1935, page 25.

[16] "The term 'firearm' means a shotgun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, *and includes a muffler or silencer* for any firearm whether or not such firearm is included within the foregoing definition." National Firearms Act of 1934, 48 Stat. 1236, 1240.

"The term 'firearm' means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive; *and a firearm muffler or firearm silencer*". 79 Congressional Record 11973–11974; Senate, July 29, 1935. (S. 3).

"The term 'firearm' means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of explosive *and a firearm muffler and firearm silencer*," 81 Congressional Record 1527; 23 id. 9658–9659. (Senate Feb. 24, 1937, engrossment of S. 3, and identical form sent to House.)

"The term 'firearm' means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive *and a firearm muffler or silencer, or any part or parts of such weapon*." 83 Congressional Record 9547, 9658–9. (House amendment of S. 3, agreed to by Senate, June 16, 1938; final form of the statute, except for repetition of "firearm" before "muffler". (Italics ours.)

were still only two ideas in the definition, the gun clause and the silencer clause. The addition of the "any part or parts" clause in the final draft when the construction of the definition had already been determined and its intent made clear in the Committee Reports for the first time gave importance to the comma and "or" by which this new clause "or any parts or parts of such weapon" was set off, but the legislative intent is clear and the fair interpretation of the context of the statute as enacted, embraces the construction urged by the government.

The Treasury Department is given important functions by the statute in administering the licensing provisions[17] under which manufacturers pay $25 per year and dealers $1 per year to engage in interstate traffic in "firearms". The licensing provisions turn on the same definition of "firearms" as the penal provision involved in the instant case.

■ The administration of the licensing provisions has been delegated to the Bureau of Internal Revenue[18]. The Bureau has issued regulations under the Act rearranging and numbering the clauses to make explicit the essentially disjunctive character of the mention of the gun and silencer in the Act.[19] Congress has had an opportunity to disapprove this administrative construction. It has not done so although it has subjected to subsequent amendment another definition in the very same section of the statute.[20] This failure to amend is "at least persuasive of a legislative recognition and approval of the statute as construed".[21]

■ The contentions urged by the defendant are rejected, and we hold the 32 caliber Colt Automatic pistol in question is a firearm within the statute.

## Motion "B"

The defendant alleges the evidence was insufficient to justify the court submitting the case to the jury and he moves to set aside the verdict of "guilty" returned by said jury.

The statute under which the defendant was tried and found guilty provides: "It shall be unlawful for any person who has been convicted of a crime of violence * * * to receive any firearm * * * which has been shipped * * * in interstate or foreign commerce, and the possession of a firearm * * * by any such person shall be presumptive evidence that such firearm * * * was * * * received * * * by such person in violation of this chapter."[22]

The government proved that on September 22, 1938, the defendant possessed the gun identified in the Indictment,[23] and that prior thereto he had been convicted of two crimes of violence[24]. It then rested.

The defense consisted of testimony by the defendant that one year before his marriage[25] he got the gun from an "unfortunate" on the city dumps. The testimony of his sister that prior to her marriage[26] she had seen the revolver in the wardrobe at home and the testimony of his wife[27] that she had seen the revolver in the wardrobe.

■ On rebuttal the government offered testimony that the gun had been made in Hartford, Connecticut, and shipped on September 23, 1919 to Chicago, Illinois. The rebuttal testimony does not contradict the defense of intrastate acquisition and the government relies upon the statutory presumption in the absence of proof that the defendant unlawfully received a firearm shipped in interstate commerce. The presumption is not conclusive and irrebuttable.[28] It is rebuttable.

---

[17] 15 U.S.C.A. § 903.

[18] T.D. 4934, July 25, 1938.

[19] "Section 315.1 * * * (b) the term 'firearm' means (1) any weapon, by whatever name known, which is designed to expel a projectile, or projectiles by action of an explosive (2) any part or parts of such weapon, and (3) a firearm muffler or firearm silencer." (T. D. 4898, May 3, 1939, 5).

[20] Amunition Act of August 6, 1939, Ch. 500, 53 Stat. 1222, 15 U.S.C.A. § 901(8).

[21] McCaughn, Collector, v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 512, 75 L.Ed. 1183.

[22] 15 U.S.C.A. 902(f), Federal Firearms Act, effective date July 30, 1938, 15 U.S.C.A. § 906.

[23] It was found in the pocket of a coat hanging in a wardrobe in the apartment where he was arrested after he admitted he had a gun in the pocket of a coat in the wardrobe.

[24] A burglary and an assault.

[25] 1934.

[26] Married about 1935.

[27] Who admitted that she had been convicted of crime.

[28] See Mobile, Jackson & Kansas City Railroad Company v. J. A. Turnipseed. Adm'r, 219 U.S. 35, 31 S.Ct. 136, 55 L.

The presumption in the statute and upon which the government relies shifted the burden of going forward[29] but not the burden of persuasion.[30] It placed upon the defendant the task of producing credible evidence. Even uncontradicted defense testimony must go to the jury for evaluation unless the trial court does not apprehend directly or intuitively doubt of its credibility. This court envisaged doubt of the credibility of the defense. Specifically in the record we have the following: Three witnesses were offered for the defense, two of them had been convicted of crime, and one of said two, namely, the defendant, gave the only explanation as to how the gun had been acquired. His story that he received it from an "unfortunate" on the city dumps would test the credulity of the credulous.

Evidence which a judge finds— a jury might disbelieve, does not destroy the presumption even though the presumption does not shift the burden of persuasion.[31] In the face of the presumption and facts and circumstances tending to cast suspicion upon the testimony and the witnesses, the credibility and relative value of the evidence offered by the defendant was for the jury.[32]

We turn to the question whether there was adequate evidence to go to the jury on receipt of the gun by the defendant after July 30, 1938, the effective date of the statute.

Does possession subsequent to the effective date of the statute presume a receipt subsequent to July 30, 1938?

The defendant by his testimony and the testimony of his witnesses tried to establish that he had the gun prior to July 30, 1938.

The statute was intended to apply to existing guns.[33] When the draftsmen recognized the difficult task of proving the manner of acquisition, they undoubtedly recognized that it would be just as difficult to prove when a defendant received a gun[34] as how he received it. Therefore, they said "possession of a firearm * * * by any person shall be presumptive evidence that such firearm * * * was * * * received by such person in violation of this Chapter". The word "Chapter" is a reflexive reference to the statute as a whole. It refers to the Section[35] fixing the effective date just as it refers to the other Sections and it extends the presumption beyond evidence of activity in interstate or foreign commerce and includes when as well as how.

A presumption similar to the one in the Firearms Act is found in the purchase section of the Harrison Narcotic Act, 26 U.S.C.A. Int.Rev.Code § 2553, that possession of drugs without stamps "shall be prima facie evidence of a violation of this subsection". The presumption refers not only to the substantive crime of purchase but also to the venue of the purchase over the contention that the venue must be independently proved.[36]

The defendant in the case at bar had the burden of coming forward with credible evidence showing possession of the gun prior to July 30, 1938, or lawful possession subsequent to July 30, 1938.

The motion to set aside the verdict of guilty is denied.

---

Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas. 1912A, 463.

[29] Wigmore, Vol. IX, page 288, #2491.

[30] See Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904. The Statutory Presumption, 5 Tulane Law Review 17; United States v. Platt et al., D.C.S.D.Tex., 31 F.Supp. 788.

[31] Morgan; Some Observations Concerning Presumptions, 44 Harvard Law Review 906. See, also, Chaika v. Vandenberg, 252 N.Y. 101, 169 N.E. 103.

[32] Hawes v. Georgia, 258 U.S. 1, 42 S. Ct. 204, 66 L.Ed. 431; George A. Luria v. United States, 231 U.S. 9, 19, 34 S.Ct. 10, 58 L.Ed. 101; Stobble v. United States, 7 Cir., 91 F.2d 69; Henry Woo v. United States, 4 Cir., 73 F.2d 897, Certiorari denied 294 U.S. 714, 55 S.Ct. 512, 79 L.Ed. 1248; Gowling v. United States, 6 Cir., 64 F.2d 796; Boyd v. United States, 9 Cir., 30 F.2d 900; United States

v. Mule, 2d Cir., 45 F.2d 132. See, also, United States v. Moe Liss, 2d Cir., 105 F.2d 144. Cf. Ezzard v. United States, 8 Cir., 7 F.2d 808.

[33] Senate Report No. 82, 75th Cong., 1st Session: Senate Report No. 987, 74th Cong., 1st Session.

[34] The question does not arise as to guns made or shipped by the manufacturer or dealer subsequent to July, 1938.

[35] 15 U.S.C.A. § 906.

[36] In re Casey v. United States, 9 Cir., 20 F.2d 752, affirmed 276 U.S. 413, 48 S. Ct. 373, 72 L.Ed. 632; Killian v. United States, 58 App.D.C. 255, 29 F.2d 455; Acuna v. United States, 5 Cir., 74 F.2d 359; Mullaney et al. v. United States, 9 Cir., 82 F.2d 638; Frank White v. United States, 9 Cir., 16 F.2d 870, Certiorari denied 274 U.S. 745, 47 S.Ct. 660, 71 L.Ed. 1326. Rosenberg et al. v. United States, 9 Cir., 13 F.2d 369.

258

The defendant is to present himself to this court on Monday, December 15, 1941, at ten o'clock in the forenoon for sentence.