# HOWELL *v.* STATE OF MARYLAND

[No. 13, September Term, 1976.]

*Decided October 19, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Bradford C. Peabody*, with whom were *Alan H. Murrell, Public Defender*, and *Arnold M. Zerwitz, Assistant Public Defender*, on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 396 *infra*.

We shall here hold that a tear gas pistol is not a handgun within the meaning of Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 36F.

Appellant, Lowell Douglas Howell, Jr. (Howell), and another were convicted in Baltimore County on a number of charges including the unlawful use of a handgun in the commission of a crime in violation of Art. 27, § 36B (d). The convictions were affirmed in *Howell and Kaschenbach v. State*, 29 Md. App. 646, 350 A. 2d 145 (1976). We granted the writ of certiorari limited solely to the question of whether the tear gas gun in question was in fact a handgun within the meaning of the Maryland statute.

The victim said the device here under consideration was stuck up to his head with a demand for money. He described it as of "a black or darkish color," saying that "it looked like a .22 to [him] anyway." The officer who apprehended Howell and his associate testified that at that time he "observed a small handgun laying on the ground behind the two subjects, directly beneath, behind them." He described it as "a model 1969 .22 caliber gas, made in Italy, black with brown plastic grips." The case was tried without a jury. After conviction and before sentencing the trial judge became concerned as to whether or not the "gun" involved met the test of the statute. In connection with a motion for new trial an expert in the field of firearms was produced by the defense. He was asked "whether or not that gun c[ould] be readily or easily converted into ... a gun

which would be explosive of projectiles?" He replied "that it could not be readily altered . . . ." He said that "[t]ear gas is a rather large quantity of very fine particles, it's not actually a gas at all. And to fire it, firing would expel these projectiles, which are very highly irritating to the eyes." The gas in connection with this gun was contained in small copper caps. He said that when the cap is struck by the firing pin an explosion takes place which expels the tear gas.

The Maryland handgun statute, Code (1957, 1976 Repl. Vol.) Art. 27, §§ 36B - 36F, was enacted by Chapter 13 of the Acts of 1972. Definitions are embodied in § 36F where it is said:

"(a) The term *'handgun'* as used in this subheading shall include any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below, except it shall not include a shotgun, rifle or antique firearm as those terms are defined below." (Emphasis in the statute.)

It will be noted immediately that the statute states what the term includes, but it does not proceed to define the term as it does with the other words mentioned in the statute. With reference to those other words in each instance the statement is made that the term "means" certain specific things.[1]

---

1. The Attorney General in 58 Op. Att'y Gen. 572, 576 (1973) opined that "[i]t is abundantly clear that the term handgun as defined [in the Maryland statute] covers the same weapons as contemplated in the definition of firearm contained in the 'Gun Control Act of 1968,' codified at 18 U.S.C. 921 (3)," stating that the latter statute "defines firearm as '. . . any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.'" The federal act says that a "destructive device" is "any type of weapon . . . by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter . . . ."

The Compact Edition of the Oxford English Dictionary (1971) defines

The rules for statutory construction in Maryland are well known: that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part; all parts are to be reconciled and harmonized if possible; if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence, or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory; and the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and in ascertaining that intent the court considers the language of an enactment in its natural and ordinary signification. *See, e.g., Gillespie v. R & J Constr. Co.,* 275 Md. 454, 457, 341 A. 2d 417 (1975); *St. Paul Fire & Mar. v. Ins. Comm'r.,* 275 Md. 130, 139, 339 A. 2d 291 (1975); *Karns v. Liquid Carbonic Corp.,* 275 Md. 1, 18, 338 A. 2d 251 (1975); and cases cited in each of those cases. Penal statutes are to be strictly construed, *State v. Fabritz,* 276 Md. 416, 422, 348 A. 2d 275 (1975); and *Giant of Md. v. State's Attorney,* 274 Md. 158, 168, 334 A. 2d 107 (1975), or, as it was succinctly put by our predecessors in *Cearfoss v. State,* 42 Md. 403 (1875):

> "No man incurs a penalty unless the act which subjects him to it, is clearly, both within the spirit and letter of the statute. Things which do not come within the words are not to be brought within them by construction. The law does not allow of constructive offenses or of arbitrary punishment. Dwarris on Stat. 247.

* * *

---

projectile as "[a] projectile object; a body impelled through the air or through space; *spec.* a missile adapted to be discharged from a cannon by the force of some explosive." (Emphasis in original.) The Random House Dictionary of the English Language (unabridged ed. 1967) says of it: "**1** *Mil.* an object fired from a gun with an explosive propelling charge, such as a bullet, shell, rocket, or grenade. **2.** a body projected or impelled forward, as through the air." (Emphasis in original.) Webster's Third New International Dictionary (unabridged ed. 1961) refers to the term as "a body projected by external force and continuing in motion by its own inertia . . . : *specif:* a missile for a firearm, cannon, or other weapon . . . ." (Emphasis in original.)

It is to be specifically noted that the Maryland statute does not define the term "firearm."

"Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction, for the purpose of either *limiting* or *extending* their operation. Dwarris on Stat. 144." *Id.* at 407. (Emphasis in original.)

Without exception, the cases we have found from without the State concerned with tear gas devices have no direct bearing on the question at hand since each case has arisen under a statute different in its wording from that with which we are concerned or the device has been factually different. *See, e.g., United States v. Decker,* 292 F. 2d 89 (6th Cir.), *cert. denied,* 368 U. S. 834 (1961); *United States v. Brown,* 376 F. Supp. 451 (W.D. Mo.), *rev'd on other grounds,* 508 F. 2d 427 (8th Cir. 1974); *United States v. Tot,* 42 F. Supp. 252 (D. N.J. 1941), *aff'd,* 131 F. 2d 261 (2d Cir. 1942), *rev'd on other grounds,* 319 U. S. 463 (1943); *Commonwealth v. Krasner,* 351 Mass. 648, 223 N.E.2d 508 (1967); *State v. Umbrello,* 106 N. H. 336, 211 A. 2d 400 (1965); *State v. Seng,* 91 N.J. Super. 50, 219 A. 2d 185 (1966); *People v. Anderson,* 236 App. Div. 586, 260 N.Y.S. 329 (App. Div. 1st Dep't 1932); *Wall v. Zeeb,* 153 N.W.2d 779 (N.D. 1967); *Haslem v. Jackson,* 68 Ohio App. 433, 40 N.E.2d 692 (1941); and *Barboursville ex rel. Bates v. Taylor,* 115 W. Va. 4, 174 S. E. 485 (1934).

In *Tot* the court was concerned with the Federal Firearms Act of 1938 where the Bureau of Internal Revenue by regulation had construed "the term 'firearm' [as] mean[ing] (1) any weapon, by whatever name known, which is designed to expel a projectile, or projectiles by action of an explosive (2) any part or parts of such weapon, and (3) a firearm muffler or firearm silencer." The court commented that "[t]he air gun and possibly the tear gas gun were the only ones intended to be excluded presumably because air is not an 'explosive' and tear gas is not a 'projectile.'" In *Anderson* the police expert "exploded a .38-caliber shot cartridge and a .30-caliber Lueger cartridge" in the gun. In *Bates* the question presented was whether a fountain pen tear gas gun was a dangerous or deadly weapon within the meaning of

the statute. In *Umbrello* the court found significant the fact that "the State failed to prove that the tear gas pencil found on the defendant could be used except with alteration or, adaptation for any purpose other than the discharge of tear gas," concluding that it was "not a loaded pistol or firearm within the meaning of [the New Hampshire statute]."

If we regard the statute here as intending to define the term handgun as "any pistol, revolver, or *other* firearm" (Emphasis added.) then the only way that "no word, clause, sentence, or phrase [may not] be rendered surplusage, superfluous, meaningless, or nugatory," is to conclude that the presence of the word "other" before "firearm" is an indication that the General Assembly intended that to be a "handgun" the device under consideration must be a firearm. This would allay the fear expressed in the dissent in the Court of Special Appeals that a water pistol might be regarded as a handgun. A conclusion that a handgun must be a firearm would be consistent with definitions which we have been able to find. For instance, the Compact Edition of the Oxford English Dictionary (1971) defines "pistol" as "[a] small fire-arm with a more or less curved stock, adapted to be held in, and fired by, one hand" and a "revolver" as "[a] pistol provided with mechanism by which a set of loaded barrels, or (more usually) of cartridge-chambers, is revolved and presented in succession before the hammer, so as to admit of the rapid discharge of several shots without reloading." The Random House Dictionary of the English Language (Unabridged ed. 1967) says that a "pistol" is "a short firearm intended to be held and fired with one hand" and a "revolver" is "a pistol having a revolving chambered cylinder for holding a number of cartridges, which may be discharged in succession without reloading." Webster's Third New International Dictionary (1961) refers to "pistol" as "a short firearm intended to be aimed and fired with one hand" and to "revolver" as "a handgun having a cylinder of several chambers that are brought successively into line with the barrel and discharged with the same hammer." The American Heritage Dictionary of the English Language (1973) refers to "pistol" as "[a] firearm designed to be held

and fired with one hand." The respective definitions of "firearm" are "[a] weapon from which missiles are propelled by the combustion of gunpowder or other explosive"; "a small arms weapon from which a projectile is fired by gunpowder"; "a weapon from which a shot is discharged by gunpowder — usu. used only of small arms"; and "[a]ny weapon capable of firing a missile, especially a pistol or rifle using an explosive charge as a propellant." To these might be added the definition of "firearm" found in Funk & Wagnalls New Standard Dictionary of the English Language (1938) as "[a]ny weapon from which a missile, as a bullet, ball, or shell, is hurled by an explosive, as gunpowder" and that in A Dictionary of American English (1940) as "[a] weapon from which projectiles are discharged by explosives." The Oxford Dictionary defines "missile" as an "object or weapon, as a stone discharged from a sling, an arrow, a bullet." In 94 C.J.S. *Weapons* § 1 (1956), it is said that "[a] 'firearm' may be defined as a weapon which acts by the force of gunpowder, or as any weapon from which a shot is discharged by force of an explosive. The term is usually applied, however, only to small arms."

If we were to deem the fact that § 36F (a) states that " 'handgun' . . . shall *include* any pistol, revolver, or other firearm" (Second emphasis added.) as indicative of a legislative intent that the term was expected to cover something broader than a firearm, then it would be necessary to look to the definition of handgun. Some dictionaries which we have examined do not define this term. A Dictionary of American English (1940) refers to it as "[a] firearm which is carried in the hand, as opposed to a cannon or other large gun"; Webster says it is "a firearm held and fired with one hand"; The Random House Dictionary speaks of it as "any firearm that can be held and fired with one hand; a revolver or pistol"; and the American Heritage Dictionary of the English Language refers to it as "[a] firearm that can be used with one hand; a pistol," all of which brings this almost full circle.

Bearing in mind the fact that penal statutes are to be strictly construed (in the words of our predecessors, "the act

which subjects [a man] to it [must] clearly [be] both within the spirit and letter of the statute") and that the language of any enactment is to be construed in its natural and ordinary signification, we conclude that to the average individual for this device to be a handgun it must be a firearm or it must be readily or easily convertible into a firearm. We further conclude that to be a firearm it must propel a missile by gunpowder or some such similar explosive and that the gas here involved is not a missile within the natural and ordinary signification of the term. When to these conclusions is added the testimony of the expert witness that this device could not "be readily or easily converted into . . . a gun which would be explosive of projectiles," the conclusion is inevitable that this device is not a handgun within the meaning of the statute.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court for entry of an order reversing the judgment of the trial court on the handgun violation; Baltimore County to pay the costs.*

*Murphy, C. J. dissenting:*

The Court holds that a tear gas pistol is not a "handgun" within the meaning of the statute because it is not a "firearm" capable of emitting a missile propelled by gunpowder "or a similar explosive." I respectfully dissent.

At trial a gun expert testified that the "tear gas" was propelled by an extremely violent explosive and was itself actually a large quantity of very fine particles and not a gas at all. He referred to the particles as projectiles. Relying on this testimony, the Court of Special Appeals held that "the propellant was an explosive charge" and that "what it propelled were projectiles or missiles." *Howell and Kaschenbach v. State*, 29 Md. App. 646, 654, 350 A. 2d 145,

150 (1976). The court added that "the size of the projectile is of no moment," and concluded:

> "[A] weapon, in the form of a pistol which will, or which is designed to, or which may readily be converted to expel, by an explosive force, tear gas in the form of finely divided solids or particles, is a 'handgun' within the meaning of art. 27, §§ 36B-36F." 29 Md. App. at 655, 350 A. 2d at 151.

The majority of this Court, however, has limited the requisite propellant to gunpowder or a similar explosive and has determined that tear gas "is not a missile within the natural and ordinary signification of the term." 278 Md. at 396, 364 A. 2d at 801. I cannot agree and therefore conclude, as did the Court of Special Appeals, that a tear gas gun fits within the statutory definition of a "handgun."

The majority lists seven definitions of "firearm" and from them concludes that gunpowder "or a similar explosive" must be the propellant if a weapon is to be considered a firearm and, consequently, a handgun. Admittedly, the propellant for a tear gas gun is not gunpowder, but it is undisputed that it is a violent explosive. The majority offers no explanation for its refusal to treat the tear gas charge as an explosive within the contemplation of the statute, and I see no legislative intent to exclude it.

The Court also finds that tear gas is not a missile, as that term is ordinarily understood. As heretofore indicated, the expert at trial testified that tear gas is not gaseous but composed of many fine particles, and his testimony was undisputed. I agree with the Court of Special Appeals that these particles are projectiles or missiles and that "Whether it be as big as an artillery shell or as small as a subatomic particle, it is still a projectile." 29 Md. App. at 654, 350 A. 2d at 150.

In my opinion, then, a tear gas gun does fit within the statutory definition of handgun, for it is a weapon which discharges a projectile, propelled by an explosive.