# LEONARD COUPLIN v. STATE OF MARYLAND

[No. 69, September Term, 1977.]

*Decided October 18, 1977.*

568

The cause was argued before GILBERT, C. J., and MENCHINE and WILNER, JJ.

*Robin John Pecora, Assigned Public Defender,* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John Prevas, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

After a two-day jury trial, the appellant was convicted in the Criminal Court of Baltimore of robbery with a deadly weapon and use of a handgun in the commission of a crime of violence. He received a fifteen-year sentence for the first of these offenses, and a five-year concurrent sentence for the second.

In this appeal, the appellant argues that five errors were committed by the trial court, namely:

(1) The court erred in denying his motion to strike three prospective jurors from the panel;

(2) The court erred in denying his motion for acquittal or, in the alternative, for a new trial, on the grounds of legally insufficient evidence of identity;

(3) The court erred in allowing the jury to hear evidence of his conviction for assault at age 16;

(4) The court erred in denying his motion for new trial on the grounds that the evidence was legally insufficient to sustain his conviction of use of a handgun in the commission of a crime of violence; and

(5) The court erred in instructing the jury with an "Allen-type" charge upon denying the jury's second request for a reading from the transcript.

At oral argument, a sixth ground for reversal was added: that under the doctrine of "merger" announced by the Court of Appeals in *Newton v. State*, 280 Md. 260 (1977), the offenses of robbery with a deadly weapon and use of a handgun in the commission of a crime of violence "merged" in such way that his conviction of the robbery offense cannot stand.

The claims are without merit, and we therefore affirm the convictions.

## I.

### Denial of Motion to Strike Jurors

The essence of appellant's complaint here is that the jury that convicted him was "police oriented", and therefore not

impartial, in contravention of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Articles 21 and 23 of the Maryland Declaration of Rights.

His complaint related to three of the prospective jurors: Juror No. 10 (Panel III) and Jurors Nos. 4 and 19 (Panel IV).

We first note that none of these three jurors actually sat on the jury, each having been stricken by appellant. The alleged error is that they should have been stricken from the panel by the court for cause, rather than requiring appellant to utilize his peremptory challenges to remove them.

Each of the three panel members responded in the affirmative to the question on *voir dire* as to whether any member of the panel was "friendly or associated with or related to anyone in the Baltimore City Police Department, the State's Attorney's Office or any other law enforcement agency." Upon further questioning, it appeared that Juror No. 4 had a daughter who worked for the Central Records Division of the Baltimore City Police Department; Juror No. 10 had worked as a librarian at the Maryland House of Correction for eleven years, but had retired from that job in 1965, eleven years earlier; and Juror No. 19 had a nephew serving on the City police force. Each of these persons stated, without equivocation, that these respective circumstances would not affect his or her ability to render a fair and impartial verdict based upon the evidence in the case; [1] and, presumably for that reason, the court declined to strike them for cause.

Neither Juror No. 4's daughter nor Juror No. 19's nephew was a witness in the case.

The appellant's claim here is fully answered by this Court's holding in *Borman v. State*, 1 Md. App. 276 (1967),

---

1. Appellant contends that Juror No. 10's response was equivocal in that he said that he didn't "think" his past employment would affect his ability to render a fair and impartial verdict. Appellant neglects to mention, however, that, upon further questioning by the court, this juror stated quite clearly and unequivocally that his past employment "will not" affect that ability.

and *Rodgers v. State,* 4 Md. App. 407 (1968), *cert. den.* 252 Md. 732 (1969).

At issue in *Borman* was the refusal of the trial court to strike for cause three prospective jurors who were married to members of the police department and one prospective juror who was friendly with several police officers; and there, as here, the record was devoid of any facts, other than that relationship, from which bias could be inferred. The Court found no error, stating at 1 Md. App. 279:

> "Neither mere acquaintance with an individual or group, nor mere relationship to witnesses, other than parties, is sufficient basis for challenging a prospective juror for cause. *Goldstein v. State,* 220 Md. 39 (1959). Bias on the part of prospective jurors will never be presumed, and the challenging party bears the burden of presenting facts, in addition to mere relationship or association, which would give rise to a showing of actual prejudice."

This was reaffirmed in *Rodgers,* where the Court, citing *Borman,* stated simply that it found no error in the refusal of the trial court to disqualify a jury member because he was related to a police officer having no connection with the case.

In light of the remoteness of the challenged relationships on the part of the three jurors and their clear statements that those relationships would not affect their ability to render a fair and impartial verdict, we find no error in the trial court's refusal to strike them for cause.

## II.

### Sufficiency of the Evidence as to Identity

Appellant's second claim is that the evidence with respect to his identity (*i.e.,* that he was the assailant) was legally insufficient to sustain his conviction.

Velda Day, the victim, was a student at Morgan State

University. She also held a part-time job at an Arundel's Ice Cream Parlor on Gay Street in Baltimore City.

Ms. Day testifed that on September 9, 1976, she had finished her last class at about 2:50 p.m. She went to the college library to get some books, and, about 3:10 p.m. was waiting for a friend to drive her home. Her friend was to meet her at 3:15 p.m.

At about 3:10 p.m., a man whom she knew as "Alfalfa" walked past, then came back and engaged Ms. Day in conversation. She told him that she was waiting for a ride home and then intended to go to work. Alfalfa offered her a ride, and, as she was "running late", she accepted. The two of them walked to the parking lot where they waited for a friend of Alfalfa's to bring the keys to the car. Two other men soon appeared with the keys, and all four got into a car, identified by Ms. Day as a beige 1967 or 1968 Volkswagen. She and Alfalfa were seated in the front, with Alfalfa driving, and the other two men were in the rear. One of these men, whom she identified in court as appellant, sat behind Alfalfa. Ms. Day stated that she had seen both of these men two or three times before in front of "Lee's Cut Rate", apparently a liquor store, located near where she worked.

When they reached Ms. Day's home, appellant stuck a gun in her neck and said to her, "Give it up." With that, he grabbed her pocketbook and began going through it, removing $58. He then took her sunglasses and removed two rings from her fingers — one a high school ring, the other a silver band with two pearls and two diamonds. She was then ordered out of the car. Ms. Day promptly reported the incident to the police.

The next evening, while Ms. Day was at work, a girl came into the store wearing Ms. Day's sunglasses and pearl ring. She was with five or six men, all of whom, upon leaving, walked across the street. Ms. Day then noticed appellant across the street with them. She walked across the street to make certain that it was appellant, and stated that, "He saw me coming and ran in Lee's and ran out the door." Ms. Day pointed appellant out to her girlfriend, Sharon Adams.

Soon thereafter, Ms. Adams, who had walked up to a nearby pool room to look for her father, told Ms. Day that she had seen appellant in the pool room. At this point, the police were called, in response to which Officer Dunnigan soon appeared. He took Ms. Day and Ms. Adams to the pool hall where both of them identified appellant, who was then arrested.

Ms. Day stated that she saw appellant several times after his arrest — once at his preliminary hearing and a few times when he walked past the store where she worked. She made a positive identification of him in court, and even referred to him by name.

Appellant bases his second claim upon a series of alleged inconsistencies or contradictions in Ms. Day's testimony which, he argues, makes her testimony unworthy of belief and inadequate to sustain his conviction. A careful review of the record, however, reveals that Ms. Day's testimony was neither inconsistent nor contradictory, and was clearly sufficient, as to the identification of appellant, to justify the denial of his motion for acquittal. *McIntyre v. State,* 17 Md. App. 526, 535 (1973). The alleged inconsistencies and contradictions are mostly the product of appellant's (or his counsel's) failure to read the transcript fairly and accurately, rather than from any confusion on Ms. Day's part. Accordingly, any reliance on the doctrine of *Kucharczyk v. State,* 235 Md. 334 (1964), would be misplaced. *Bailey v. State,* 16 Md. App. 83 (1972). For these reasons, we find also that the court did not abuse its discretion in denying appellant's motion for a new trial.

## III.

### *Conviction for Assault at Age 16*

Appellant claims that the trial court erred in "allowing the Jury to hear alleged impeachment evidence of the appellant's prior conviction as an adult in Baltimore City at age 16," prior to the decision in *Long v. Robinson,* 436 F. 2d 1116 (1971).

The context in which this evidence was presented was as

574

follows. The appellant testifed in his own defense. On cross examination, the following colloquy occurred:

> "Q   Mr. Couplin, have you ever been convicted before in the adult Criminal Court of a criminal offense when you had a lawyer with you or when you told the judge you didn't need a lawyer?
>
> A   Not actually convicted. I pleaded guilty to a charge.
>
> Q   How many times did that take place?
>
> A   How many times?
>
> Q   Yes, sir.
>
> A   Once or twice. Twice.
>
> Q   What were the charges?
>
> A   One was manslaughter.
>
> Q   What was the other one?
>
> A   Other one was assault.
>
> Q   And when were they? Do you recall?
>
> A   The assault was when I was sixteen and the manslaughter was in '71.
>
> MR. SHAPIRO: Your Honor, I would object and ask to approach the bench.
>
> THE COURT: All right."

At the bench conference, defense counsel stated:

> "We do have a problem here because if he was convicted of an assault when he was sixteen, of course he was not an adult and although the prosecutor asked the question properly, he got the wrong answer. *I would ask at the appropriate time for some sort of curative instruction to the jury.*" (emphasis supplied).

No motion to strike the appellant's answer was made — only a request for a "curative instruction" at the appropriate

time. The record shows that the court granted that request, for, in instructing the jury, the court stated:

"In this case the Defendant admitted previous convictions, one for manslaughter and one for assault when he was sixteen years of age. For the purposes of this case you are to disregard the assault conviction which occurred when he was sixteen years of age. You may only consider for purposes of this case his manslaughter conviction in determining, if you choose to do so, his credibility as a witness."

There was no error here. The question asked was perfectly proper; there was no motion made to strike the arguably inappropriate answer; and the court adequately gave the cautionary instruction requested by appellant. It is presumed that the jury followed that instruction and disregarded the appellant's allegedly erroneous and prejudicial statement. *Wilson v. State*, 261 Md. 551, 570 (1971). Even if it, in fact, did not, in light of all of the other evidence properly before the jury, including appellant's prior conviction for manslaughter, the error, on the part of the jury, would have been harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638 (1976).

IV.

*Sufficiency of the Evidence to Sustain*
*Conviction of Handgun Offense*

Appellant's claim here is a "double-barrelled" one. Initially, he argued only that Ms. Day's description of the gun used as having two barrels was sufficient to require an acquittal on the handgun charge, upon the assumption that a handgun cannot have two barrels.

The context of her testimony concerning the gun was as follows:

"Q   When he snatched it from you, what, if anything, did he have in his hand?

A   A gun.

Q   When you say gun, can you describe what the gun looked like? Size, color, anything like that?

A   It had two barrels. It was a handgun and that's about it."

Ms. Day was not examined, or cross-examined, further with respect to the gun. Additional evidence on this point was received from Officer Simmons, who responded to Ms. Day's initial call to the police, and who stated that Ms. Day told him that her assailant was "armed with a small pistol."

The fact of the matter is that handguns containing, or appearing to contain, two barrels do exist and, unfortunately, are sometimes wrongfully used; [2] and thus, Ms. Day's description of the gun used as being of that type may well have been accurate. That aside, however, she clearly stated that appellant had a gun in his hand, which she testified was a "handgun", and which she described to Officer Simmons as being a "small pistol". To the extent that the presumed uniqueness of a two-barrelled handgun might raise any doubts, it would, at best, go to the relative weight to be given to her testimony on that point — a matter for the trier of fact to determine. Ms. Day's other testimony coupled with that of Officer Simmons was clearly sufficient to withstand a motion for new trial or for acquittal. *See Miller v. State*, 231 Md. 158, 161 (1963); *Bell v. State*, 5 Md. App. 276 (1968).

The second barrel of appellant's claim is that, under the authority of *Todd v. State*, 28 Md. App. 127 (1975), *Tisdale v. State*, 30 Md. App. 334 (1976), and *Howell v. State*, 278 Md. 389 (1976), it was incumbent upon the State to prove that the gun used by appellant was, in fact, capable of firing a projectile by an explosive propellant. As such proof was not

---

**2.** Perhaps the best example of a "small pistol" containing two barrels is the derringer, of which at least two models, both .22 calibre, are illustrated in an informative publication known as GUNS ILLUSTRATED 1976, 8th Ed., pp. 132, 144. There is also the Ruger New Model 357/9MM Blackhawk and Convertible Blackhawk, a somewhat more authoritative pistol appearing to contain two barrels, which one may view on page 331 of the GUN DIGEST, 1974 Deluxe Edition, Library of Congress Catalog No. 44-32588.

produced, appellant argues that there was insufficient evidence that the weapon was legally a "handgun" within the ambit of MD. ANN. CODE art. 27, § 36B (d).

The full impact of this rather intriguing argument becomes clear when one considers where it leads. What, in essence, appellant is saying is that, (1) in order to sustain a conviction under § 36B (d), the State must prove that a handgun was used; (2) in order to do that, the State must show that the weapon in question was capable of firing a projectile by virtue of gunpowder or similar explosive force; (3) where, as here, the gun was neither fired nor found, there can be, and was, no evidence of its "fireability" by such means; and (4) as a result, he (and others in like circumstances) cannot therefore be convicted under that section.

Appellant's first premise is, of course, correct as a matter of law, and his third is probably correct as a matter of fact. His syllogism collapses, however, upon the weakness of his second premise, because the cases upon which it is based do not support it.

In *Todd, Tisdale,* and *Howell,* a weapon alleged to be that used in the commission of a felony or crime of violence was found and admitted into evidence; and the issue was whether that weapon was, in fact, a handgun. In *Todd,* evidence was offered that the weapon, which had the appearance of a .45 calibre pistol, fired a .22 calibre pellet through the explosive action of a carbon dioxide cartridge; and, based upon that evidence, it was declared by this Court to be a handgun.[3] In *Tisdale,* the weapon was described as a .22 calibre gas pistol, but there was no evidence at all, except the weapon itself, as to what it was or how it worked. Thus, this Court stated that there was a gross insufficiency of evidence as to the nature of the weapon, requiring that the conviction be reversed. In *Howell,* the evidence established that the weapon was a teargas gun, which the Court of Appeals held was not a handgun because, from the

---

3. This conclusion has since been overruled by this Court as the result of *Howell. See* Douglas v. State, 37 Md. App. 557.

evidence, it did not fire a missile propelled by gunpowder or a similar explosive.

It is one thing to say that, where the weapon alleged to be a handgun is produced and examined, and the evidence either shows that it was not a handgun or fails to demonstrate adequately that it was, there can be no conviction. It is quite another to extend the "sufficiency" theory to produce the same result when, despite credible testimony that the assailant used a weapon described as a handgun, a small pistol, the weapon was not subject to empirical examination because it was not recovered. There is no suggestion in any of the three cases, or in any other brought to our attention, that a conviction is unobtainable under this latter circumstance.

In *Todd*, this Court stated at 28 Md. App. 132 that, "[t]angible evidence in the form of the weapon used in an offense certainly is not an essential to proof of the use of a weapon." *A fortiori*, such proof may rest upon extrinsic evidence as to the nature of the weapon. The statute, § 36B (d), does not require that the weapon actually be fired as an element of the crime, and we do not believe that, in the absence of the weapon's recovery, there is any requirement that it be fired simply to provide evidence of its "fireability." When Ms. Day testified that the appellant stuck a handgun, which she described as a small pistol, in her neck, and there was no other evidence, except appellant's alibi and general denial, to contradict, must less controvert, that testimony, the State, in our judgment, produced sufficient evidence of the use of a handgun in the commission of a felony or crime of violence to have the issue considered by the jury and to sustain the verdict rendered by it.

## V.

### *The "Allen-type" Charge*

The jury retired to deliberate its verdict at 4:05 p.m. Two hours later, the court received a note from the Forelady stating that the jury was unable to agree. The court brought the jury back and gave it a mild "Allen-type" charge, to

which no objection was made below and no complaint is made here. Ninety minutes later, the Forelady sent another note requesting to hear "that portion of Miss Day's testimony covering the trip from her place of work to the bar, pool hall, the rest and her identification of the suspect."

The court brought the jury back a second time and stated to it:

> "Well now, you have all heard the evidence. You have to rely, as I told you previously, on your own recollection of the evidence and you will have to make a determination based on what you have heard. Now, in view of the Court's response to this question, I suggest you go back to the Jury Room and determine if you have made any progress since you have last reported to the Court and whether there is an expectation of your reaching a verdict. I do hope you are able to reach a verdict, but you have to report that to me. All right. So, go back to the Jury Room."

It is these remarks about which the appellant complains. However, as he raised no objection to them below, and, as we find no "plain error" in them material to appellant's rights, we have no occasion otherwise to consider this complaint. Maryland Rule 756 g.

## VI.

### Merger—Double Jeopardy.

Appellant's final argument, equally without merit, is that, under *Newton v. State*, 280 Md. 260 (1977), the offenses of robbery with a deadly weapon and use of a handgun in the commission of a felony or crime of violence somehow merge in such manner as to vitiate the conviction for robbery with a deadly weapon.

Prior to *Newton*, this Court had considered essentially the same argument of merger based on double jeopardy in *Bremer v. State*, 18 Md. App. 291 (1973), *cert. den.* 415 U. S. 930 (1974), except that there the claim was the handgun

offense merged into the crime of violence rather than the other way round. We rejected that contention, stating at page 344:

"The legislative intent is pellucid. A person using a handgun as proscribed 'shall be guilty of a separate misdemeanor' and upon conviction, 'shall, in addition to any other sentence imposed by virtue of the commission of said felony or misdemeanor,' receive a separate sentence of no less than the minimum of five years. The statute patently precludes the application of the doctrine of merger. We so hold."

This holding was reaffirmed in *Cates v. State*, 21 Md. App. 363 (1974).

A year later, in *Ford v. State*, 274 Md. 546 (1975), the Court of Appeals, in holding that a conviction under § 36B (d) may stand in face of an acquittal of the crime of violence upon which it is based, stated, at page 551:

"[W]hen the trier of fact considers an indictment containing both a section 36B (d) handgun count and a felony or crime of violence count, a conviction on the former can still be sustained even if the trier of fact returns a finding of not guilty on the latter — in fact a finding of guilty under both, since they are not inconsistent, can each stand. A logical corollary then of each of these statements is that when section 36B (d) dictates that any person who is guilty of the handgun offense shall be sentenced 'in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor,' it directs that irrespective of the number of years, if any, the defendant receives for the 'said felony or misdemeanor,' the court must impose a penalty, within the limitations for confinement contained in the statute, for the independent handgun offense."

These cases aside, the fallacy of appellant's claim is apparent from the *Newton* case itself. There, Mr. Newton

had been convicted of "felony murder" — murder in the course of the perpetration of an attempted robbery — as well as the attempted robbery forming the basis of the felony murder. In addition, he was convicted on two counts of using a handgun in the commission of a crime of violence, one crime of violence being the felony murder, the other being the attempted robbery.

The Court held that, under double jeopardy principles, the attempted robbery merged with the felony murder and therefore the conviction of the lesser offense was vacated. Without mentioning its prior decision in *Ford v. State*, 274 Md. 546 (1975), the Court then stated that, with the nullification of the attempted robbery conviction, there was only one crime of violence, and thus voided the handgun conviction based upon the attempted robbery. Significantly, however, it left standing the handgun conviction based upon the felony murder, thereby making implicit, if not explicit, its positive affirmance of its statement in *Ford* that the handgun offense does not merge with the crime of violence upon which it is based.

This result is hardly the product of inadvertence, but is entirely consistent with the underlying principle laid down in *Newton*. The Court stated, at 280 Md. 268:

> "Thus, under both federal double jeopardy principles and Maryland merger law, the test for determining the identity of offenses is the required evidence test. If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited." [4]

---

**4.** The Court did not discuss in its Opinion whether the clear language in § 36B (d) that a violation of that section was a "separate misdemeanor" would itself preclude a merger under the common law doctrine of merger, as distinct from a "Constitutional" merger arising from double jeopardy principles. For purposes of this case, we presume the "double jeopardy" test to be controlling in any event, and therefore need not address that question.

Applying this test to the two offenses involved here, it is clear that *each* requires proof of a fact or circumstance that the other does not, thus precluding a merger. Robbery with a deadly weapon, as its name implies, requires proof of both a robbery and the use of a deadly weapon in its perpetration. The deadly weapon need not, however, be a handgun. A conviction under § 36B (d), on the other hand, requires proof that a handgun was used, which the other does not, as well as proof that it was used in the commission of a felony or crime of violence. But, to support a conviction under the handgun law, it is not necessary to prove that a robbery was committed. Any felony or crime of violence will suffice.

Appellant's argument might have some semblance of validity under what the Court of Appeals termed the "actual evidence" test; *i.e.*, whether the evidence actually produced at trial on both offenses is substantially the same. However, the Court specifically rejected that test in *Newton* in favor of the "required evidence" test quoted above; and in terms of what is "required", as opposed to what is actually produced, we find that one offense requires proof of a robbery, which the second does not, and the second requires proof that a handgun was used, which the first does not. Each, therefore, requires proof of a specific fact that the other does not; and under both the "test" and the actual holding in *Newton,* the two offenses do not merge.

*Judgments affirmed.*
*Costs to be paid by appellant.*