522 A.2d 401

**Kenneth WRIGHT**

v.

**STATE of Maryland.**

**No. 1039, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 11, 1987.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, for Baltimore City and Jeffrey R. Levenson, Asst. State's Atty. on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and KARWACKI, JJ.

WILNER, Judge.

As a result of an incident that occurred on December 9, 1984, appellant was convicted by a jury in the Circuit Court for Baltimore City of attempted robbery with a dangerous or deadly weapon, unlawfully carrying a handgun, and unlawful use of a handgun in the commission of a crime of violence. From the judgments entered on those convictions, appellant has brought this appeal, raising four issues:

"1. Did the trial judge err in refusing to give a requested handgun instruction?

2. Was the evidence sufficient to sustain Appellant's convictions?

3. Was Appellant's sentence based, in part, upon impermissible considerations?

4. Did the trial judge abuse his discretion in refusing to grant Appellant's request for a continuance?"

We shall answer the first question in the affirmative, the others in the negative.

*Jury Instruction*

The victim, Rodney Brown, testified that appellant approached him on the street, pulled a gun, and said, "You know what it is, give it up." When Mr. Brown refused to give up his property, including a lambskin jacket and some gold chains he was wearing, appellant stated, "You are going to die with it on" and pulled the trigger. The gun "clicked" but did not fire, whereupon appellant left the scene.

In light of this evidence, counsel requested the following instruction on the handgun counts:

"The term 'handgun' means any pistol, revolver, or other firearm which is:

(1) capable of being concealed on the person, and

(2) operable or easily made operable, and

(3) capable of firing a missile or projectile as a result of a gunpo[w]der or similar explosive.

*Couplin v. State,* 37 Md.App. 567 [378 A.2d 197] (1977) Neither a $CO_2$ gun, tear gas gun or toy gun is a handgun under this section. *Douglas v. State,* 37 Md.App. 557 [378 A.2d 189] (1977)."

Denying appellant's request, the court, over appellant's objection, instead instructed the jury that, "A handgun is defined and [*sic*] including a pistol, revolver or other firearm which is capable of being concealed upon one's person."

Appellant contends that the instructions actually given did not fairly cover the issue he wished the jury to consider, as required by Md.Rule 4–325(e), and, consequently, that the trial judge committed reversible error by refusing to give the instruction requested. We agree.

■ "[I]t is incumbent upon the court, ... when requested in a criminal case, to give an ... instruction on every essential question or point of law supported by evidence." *Smith v. State,* 302 Md. 175, 179, 486 A.2d 196 (1985) (quoting *Bruce v. State,* 218 Md. 87, 97, 145 A.2d 428 (1958)). The evidence in support of an essential question or

point of law may be "well-nigh incredible as a matter of fact, but not necessarily so as a matter of law." *See Howell v. State,* 56 Md.App. 675, 468 A.2d 688 (1983), *cert. denied* 299 Md. 426, 474 A.2d 218, 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984), —— U.S. ——, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985). The "bottom line" is that, if a *prima facie* case is generated on a particular point of law, the defendant is entitled to a jury instruction on that point. *See id.*

The handgun instruction given by the trial court essentially encompassed the statutory definition of "handgun" under Md.Code Ann. art. 27, § 36F(a), but, under the circumstances, that was not enough.

■ In *Howell v. State,* 278 Md. 389, 396, 364 A.2d 797 (1976), the Court looked at the statutory definition and decided that, to be a "handgun" the device had to be a "firearm," and that, to be a "firearm," it "must propel a missile by gunpowder or some such similar explosive" or "be readily or easily converted into" a device capable of so propelling a missile. As subsequent cases illustrate, that definition has two aspects to it. Generically, it serves to exclude entirely such weapons as starter pistols, $CO_2$ guns, and B–B guns, which are simply not designed or constructed to fire missiles by gaseous explosion and, because of their design and construction, are not capable of doing so. *See Howell, supra,* 278 Md. 389, 364 A.2d 797; *Douglas v. State,* 37 Md.App. 557, 378 A.2d 189 (1977); *Grant v. State,* 65 Md.App. 547, 501 A.2d 475 (1985), *cert. denied* 306 Md. 70, 507 A.2d 184 (1986).

Secondarily, it requires even a weapon designed and constructed as a firearm actually to be capable of discharging the missile. Referring to the expressed legislative intent in enacting the handgun law, we observed in *York v. State,* 56 Md.App. 222, 229, 467 A.2d 552 (1983), *cert. denied* 299 Md. 137, 472 A.2d 1000 (1984), that the potential for the special harm addressed by the statute "exists only when the weapon, at the time of the offense, is useable as a

handgun"—that "[i]f it is not then so useable, its likelihood of inflicting injury is no greater than that produced by a knife or a club—bad enough, but different from the special hazard to the victim that the legislature attached to the use of handguns."

This secondary aspect—that of operability—is the one at issue here. There is nothing to suggest that the weapon employed by appellant was not designed and constructed to fire a missile by gaseous explosion.

Most of the cases involving this secondary aspect have concerned the sufficiency of the evidence presented by the State. *Couplin v. State*, 37 Md.App. 567, 378 A.2d 197 (1977), *cert. denied* 281 Md. 735 (1978), is a prime example; the weapon itself, although described by the victim, was never recovered, and the argument was made that the State had failed to prove that the weapon was, in fact, capable of firing a projectile by an explosive propellant. We rejected that argument, concluding, in effect, that where the gun is not available for empirical inspection an inference of operability can be drawn from other extrinsic evidence as to the nature of the weapon. *See also Brown v. State*, 64 Md. App. 324, 494 A.2d 999, *cert. denied* 304 Md. 296, 498 A.2d 1183 (1985). In *York v. State, supra*, 56 Md.App. 222, 467 A.2d 552, the gun was recovered, and a judgment could be made as to its operability from the weapon itself and from expert testimony about it.

■ We are not dealing here with the sufficiency of the evidence to sustain a conviction, but only with whether the evidence generated a sufficient question as to the operability of the weapon to require the jury to consider that point. We believe that threshold—as noted, a minimal one—was crossed. The evidence showed that the assailant verbally threatened to kill the victim, that he pulled the trigger of the gun in an apparent attempt to carry out that threat, and that the gun "clicked" but did not fire when the trigger was pulled.

■ There are, we imagine, any number of rational explanations for that exceedingly fortunate failure, one of which is that the gun was simply inoperable. Although such an inference is by no means a required one, it appears to us that, had the requested instruction been given, the jury could fairly have entertained a reasonable doubt as to whether the gun was operable and thus as to whether it was a "firearm." The general instruction given by the court was not at all germane to that issue and therefore did not suffice to present it to the jury. We accordingly reverse appellant's convictions for unlawful use of a handgun in the commission of a crime of violence and unlawful carrying of a handgun, as those crimes are within the purview of art. 27, § 36B.

The question of whether the weapon used was a "handgun," within the meaning of art. 27, § 36B, is irrelevant, however, to appellant's conviction for attempted robbery with a deadly or dangerous weapon. *See Grant v. State, supra,* 65 Md.App. 547, 557, 501 A.2d 475. Hence, the failure to give the instruction at issue has no impact upon that conviction.

### Sufficiency of the Evidence

Appellant's assertions that the evidence did not suffice to support his convictions are patently frivolous.

### Sentencing

■ Appellant urges us to find that his sentence was based, in part, upon impermissibly considered charges which had been either *nol prossed* or stetted. Our review of the trial judge's comments at sentencing leads us to a contrary conclusion. In reviewing appellant's prior record, the court specifically stated with respect to one stetted charge, "That can't be held against him." Furthermore, although not repeating that phrase each time the sentencing judge mentioned a *nol prossed* or stetted charge, similar disclaimers can be implied from his statement, upon completion of his review of appellant's prior record, that, "I

don't know, but in any event, the ones that he has been convicted of, robbery with a gun and robbery with a knife, and now this one robbery, and he says he has been convicted of something that he didn't do." We therefore conclude that the sentence imposed was based upon proper considerations.

### Request for Continuance

Appellant contends that the trial judge abused his discretion when he denied him a continuance to allow him to locate a missing witness.

To show such an abuse of discretion, the party who requests the continuance must show:

"(1) that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; (2) that the evidence was competent and material, and he believed that the case could not be fairly tried without it; and (3) that he had made diligent and proper efforts to secure the evidence."

*Jackson v. State,* 288 Md. 191, 194, 416 A.2d 278 (1980) (quoting an earlier *Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638 (1957), *cert. denied* 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816 (1958)).

■ Appellant has made no showing that he had a reasonable expectation of securing the witness's testimony within a reasonable period of time. As of the previous night, the witness had promised appellant's counsel that he would appear in court. Moreover, appellant's counsel could not locate the witness during the 1½–hour luncheon recess. Also, when called in an effort to locate her brother, the witness's sister stated that he had left for court that morning and had not been heard from since. As the trial judge noted, "apparently the witness is in a hiding place. He certainly knows where the courthouse is."

Furthermore, appellant's proffer of what the witness was expected to testify to does not reveal the evidence as being either material or necessary to a fair trial. According to

counsel, the witness would testify that, on approximately the date of this offense (the witness did not remember the exact date), he was with the appellant and others when the victim came over to appellant, and the two of them walked down the street, still talking together. In the circumstances of this case, we find this proffered information to be neither material nor essential to a fair trial.

Finally, appellant has made no showing of due diligence in his effort to obtain his witness. Importantly, the witness was not under subpoena. Also, although appellant's counsel did not have a correct address for the witness until two days before trial, he relied upon the witness's promise that he would show up. We do not agree that these efforts on the part of appellant measure up to due diligence. Hence, based on these criteria, we find no abuse of discretion on the part of the trial judge in failing to grant the continuance.

JUDGMENT AS TO THE ATTEMPTED ROBBERY WITH A DANGEROUS OR DEADLY WEAPON AFFIRMED; JUDGMENTS AS TO UNLAWFUL CARRYING OF A HANDGUN AND UNLAWFUL USE OF A HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE REVERSED, AND CASE REMANDED FOR RETRIAL ON THOSE COUNTS; COSTS TO BE PAID ONE–THIRD BY APPELLANT AND TWO–THIRDS BY MAYOR AND CITY COUNCIL OF BALTIMORE.